## TOLSON'S Adm'r. vs. GARNER.

1. Any man against whom a conveyance or contract is set up, is at liberty to show, that at the time of making it, he was not possessed of sufficient reason, to be capable of understanding the act he was performing. The weight of American authority is decidedly opposed to Lord Coke's assertion, that it is a maxim of the common law, that no person of full age, shall be allowed, by plea, to stultify himself, and thereby avoid his deed, or contract.

2. If the conveyance of an insane person is void, no act is necessary previous to the institution of suit; if it is voidable only, the guardian of the insane person may make demand, and avoid the previous alienation of his insane ward.

## ERROR to Howard Circuit Court.

## Davis & Leonard, for plaintiff in error.

1. At law, the deed of Polly Tolson is not void on account of her supposed want of intellect, there having been no commission found before the deed was made.

2. The deed of such a person is not void, but is, by modern authors likened to the deed of an infant.

3. Even in equity the deed would not be avoided, if made for the benefit and advantage of Polly Tolson.

4. The instructions of the court were wrong, the cause being in a court of law, in which the deed cannot be avoided.

5. No testimony should have been received by the court on the subject of the insanity of Polly Tolson at the time the deed was made: 2 Greenl. Ev. sec, 369: 4 Cowen's Rep. 216: 21 Wendell, 142: 1 Story on Equity, 232.

## Clark & Prewitt, for defendant in error.

1. The deed of one *non compos mentis* has always been held void at law as against the heirs and representatives: 3 Bacon. Abridg. 538: 2 Co. Lit., side page 214: 3 do, side page 45.

2. The dogma, that a man shall not be permitted to stultify himself is exploded; and he may now avoid his deed by showing his own insanity: Yates vs. Bowen; 2 Strange, 1104: Pitt vs. Smith 3 Camp. 33; 1 Chitty Plea. 519: Long on sales, 23; Chitty contracts, 136: Story on contracts, secs. 23, 26, 27: 2 Greenl. Ev. secs. 246, 300: Webster vs. Woodford, 3 Day 90: Mitchel vs. Kingman; 5 Pick 431; 11 Pick 304: Rice vs. Peat, 15 John. 502: Long vs. Whidden; 2 N. Hamp. 435: Hale vs. Hills 8 Com. 39; 2 N. C. on Iredell's Rep. 23; 2 Kent, 452; Shepherd's Touchstone, 233; Phillip's Evidence 2 or 4 vol. p. 148: 2 Kent. Com. 451, 452 and note.

3. The second, third and fifth instructions, asked by plaintiff in error were properly refused; because they were calculated to mislead, and because the point is fairly put in her fourth and sixth instructions which were given, and the second and third instructions asked by defendant in error: 2 Kent. Com. 452: Hale vs. Hills 8 Con. Rep. or 3 Con. Rep. (new series) 39: Chitty med juris 359; Shelford Lunacy 258: 2 N. C. or Iredell 23: Williams vs. Vanmeter, 8 Mo. Rep. 339; Long on sales, side page 74.

Tolson's Adm'r. vs. Garner.

GAMBLE, J., delivered the opinion of the court.

This was an action of detinue for slaves, commenced in the name of Polly Tolson, a person of unsound mind, by her guardian. The plaintiff's evidence consisted of the proceedings in the county court of Howard county upon an inquest of lunacy, in which Polly Tolson was found to be a person of unsound mind, and a guardian was appointed; of proof that the slaves had been in the possession and were the property of the plaintiff, and that they had been demanded from the defendant, who had them in possession at the commencement of the suit. The defendant relied upon a conveyance of the slaves, made by Polly Tolson to her, prior to the appointment of the guardian. This conveyance was attached upon the ground, that at the time of making it, Polly Tolson was of unsound mind and incapable of disposing of her property. Upon the question of insanity, much evidence was given, which need not be stated, as the case is here to be decided upon the questions of law arising upon the instructions of the court, given and refused.

The defendant asked the court to give to the jury nine instructions, of which the fourth, sixth, seventh and eighth were given and the others refused. They are as follows :

1. "If the jury believe from the evidence, that Polly Tolson executed the deed offered in evidence, dated the third day of September, 1847, and thereby conveyed the negroes in controversy to the defendant, they must find for the defendant, although they may believe that at the time of such conveyance said Polly Tolson was of unsound mind."

2. "To enable the plaintiff to recover in this action, the jury must believe that at the time of executing the deed by Polly Tolson to defendant, she was totally deprived of intellect and incapable of the exercise of her reasoning faculties."

3. "Plaintiff cannot in this action avoid the deed offered in evidence, by proof of partial derangement of mind, or imbecility of mind, not amounting to idiocy, or lunacy, and unless the jury believe from the evidence that at the time of executing the deed Polly Tolson was *non compos mentis*, they must find for the defendant."

4. "Imbecility of mind, not amounting to lunacy or idiocy in the gran:or of land, is not of itself sufficient to avoid a deed."

5. *Non compos mentis* means a person who was of good and sound memory, and by the visitation of God has lost it, or he that by sickness, grief or other accident or any other cause wholly loseth his understanding."

6. "If the jury believe from the evidence, that Polly Tolson at the

time of executing the deed offered in evidence had sufficient intellect to comprehend the nature of the transaction, they must find for the defendant, unless they further find that such deed was procured by fraud."

7. "The presumption of law is, that Polly Tolson, at the time of executing the deed, was of sound mind, and it devolves upon the plaintiff to prove that at the time she was of unsound mind."

8. "At law, fraud is never to be presumed, but must be proved by the party relying upon it to avoid a deed."

9. "If the jury believe from the evidence, that Polly Tolson executed the deed read in evidence on the 3rd day of September, 1847, and thereby conveyed the negroes in controversy to the defendant, they must find for the defendant, although they may believe that at the time of such conveyance said Polly Tolson was of unsound mind, unless they further find that execution of said deed was procured by fraud."

The plaintiff asked the court to give the following instructions, and they were all given, as follows:

1. "That although the jury may believe plaintiff not insane, yet they may take any weakness of intellect of plaintiff into consideration in determining the question of fraud."

2. "That if the jury believe from the evidence, that the plaintiff, at the time of the execution of the deed read in evidence by the defendant, was of unsound mind and incapable of comprehending the notion and object of the same, and the property sued for was the plaintiff's at the time of making said deed, they will find for the plaintiff.".

3. "That if the jury believe from the evidence, that at the time of executing the deed read in evidence by the defendant, the plaintiff labored under a derangement of mind so as to render her incapable of comprehending the nature of said conveyance, and that the negroes were the property of the plaintiff at the time of executing said deed, they will find for the plaintiff."

4. "That if the jury believe the plaintiff, a short time before the execution of the deed read in evidence by the defendant, was laboring under a general derangement of mind, so as to deprive her of the use of her mental faculties, the presumption is that such derangement existed, unless the evidence shows that she was sane at the time of the execution of the deed."

5. "That although fraud is not to be presumed, it may be proved by circumstantial evidence."

The question which is first presented for consideration, is whether a person of unsound mind can avoid his own deed, upon the ground of insanity. It would be a waste of time at this day, to examine the cor-

rectness of Lord Coke's assertion that "it is a maxim of the common law, that no person of full age, shall be allowed by plea to stultify himself and thereby avoid his deed or contract;" or to weigh against his authority the denial of Fitzherbert, that such was ever a maxim of the common law. It may be assumed, that, in the present condition of the law as administered by the most enlightened tribunals, any man against whom a conveyance or contract is set up, is at liberty to show, that at the time of making it, he was not possessed of sufficient reason to be capable of understanding the act he was performing. While in that condition, his deed or contract has not that assent of the mind which is essential to the legal validity of such acts; and he is permitted now, notwithstanding the acquiescence of courts in other days, in the maxim stated by Lord Coke, to avail himself of this defence and avoid his contract. Some of the authorities, showing the present state of the law on this question, are cited in the brief filed for the defendant in error, to which many more might be added; but it would be a useless labor. In the opinion given by Mr. Justice Wilde, in Mitchell vs. Kingman, 5 Pick. R. 431, there is a rapid and satisfactory examination of the earlier authorities, and Lord Coke's maxim is spoken of as of doubtful origin and authority. The weight of American authority is decidedly opposed to it.

In some cases there is a comparison instituted between the contracts and conveyances of infants and those of persons of unsound mind, and the latter are said to be voidable only as those of infants are. In an opinion delivered by Judge Robertson, 1 J. J. Marshall, 236, in Breckridge's heirs vs. Ormsby, the deed of a lunatic is held only to be voidable as the deed of an infant is; and there is there an elaborate examination of the law as to the mode by which an infant's deed may be avoided. So in Wait vs. Maxwell, 5 Pick. 217, Chief Justice Parker, speaking of a deed made by a lunatic, says: "The deed of Dorothy Kemp (the lunatic) was not void but only voidable. It conveyed a seizin to the grantee, defeasible by her, her heirs or devisees, when entry should be made to avoid it;" again he says, "the presumption of law was in favor of her capacity, and her deed was valid, until by entry or action, the grantee was ousted or the deed avoided."

It is not necessary in this case, to attempt to trace the resemblance between the contract, of infants and those of persons *non compos mentis*, with a view to find in the law regulating the contracts of infants, rules to be applied to the contracts of lunatics. An infant's deed for his land cannot be avoided until he comes of age, while it is said that his sale of a chattel may be avoided during his minority: 9 Cow. R.

626; 13 Mass. R. 204, 205. If we regard the conveyance of the slaves in this case as only voidable, we do not doubt that the demand, made upon the defendant by the guardian of the plaintiff, before suit brought, was a sufficient avoidance of the deed or act of sale. Slaves, like other personal property, pass without writing, and the fact, that there was an instrument of writing executed, does not confer any other right upon the vendee than would be vested by a transfer without writing. Nor does the writing interpose any obstacles to the avoidance of the sale, which would not exist if the transfer had been without writing. It was made the duty of the guardian "to collect and take into his possession the goods, chattels, moneys and effects, books and other evidences of debt, and all writings touching the estate, real and personal, of the person under his guardianship:" Revised Code, 595, sec. 14. The act directs the administration of the estate of the insane person, with as much particularity as is required in the administration of intestates' estates, and the 19th section declares it to be the duty of the guardian, to prosecute and defend all actions instituted in behalf of, or against his ward. It can scarcely be doubted, that the guardian, thus vested with the control and management of the estate of an insane person, although the strict legal title is not vested in him, is as competent to avoid the previous alienation of these slaves, made by his insane ward, as would be the present administrator who has succeeded him in the administration. These remarks are made, upon the supposition that the transfer of the slaves was only voidable. If it be void, then no act was required previous to the institution of the suit.

If we examine the instructions given by the court, they will be found to be chiefly directed to the kind or degree of insanity that avoids the sale, and the court has laid down the law with limitations as favorable to the defendants as could be asked. The jury were told, that if Polly Tolson, at the time of making the conveyance, labored under a derangement of mind, so as to render her incapable of comprehending the nature of the conveyance, and that the negroes were hers at the time of making the deed, they should find for the plaintiff. On the part of the defendant, the court gave the converse of the proposition, telling the jury, that if she had sufficient intellect to comprehend the nature of the transaction, they must find for the defendant, unless the deed was procured by fraud. The view thus taken by the circuit court, of the degree of insanity which would avoid a conveyance, was as favorable as the defendant could desire, and was altogether preferable to mere definitions of the different kinds of insanity, mentioned by legal and medical writers.

The other instructions, which speak of imbecility of minds, as a cir-cumstance to be considered in determining the question of fraud, are not assailed in the argument.

The case appears to have been fairly put to the jury by the instructions of the court, and the judgment is affirmed.