Groner v. Smith.

JESSE GRONER, Appellant, *v.* BENJAMIN D. SMITH, Respondent.

1. *Deed—What a sufficient sealing.*—The word "seal" at the end of the name of the maker of a deed, and referred to and adopted in the testimonium, is a sufficient sealing.

2. *Sheriff's deed — Sale after first term — Recitals, sufficiency of.*—The omission in a sheriff's deed to recite the reason why the sale was not made at the first term of court to which the execution was returnable, is not such an omission as to render the deed void.

3. *Attachment—Order of publication, copy of—Errors, what taken advantage of collaterally.*—The publication of an original order of publication instead of the copy, although irregular, would be a substantial compliance with the statute; certainly not such an error as to be taken advantage of collaterally, as by defendant in ejectment brought by the purchaser of land at an attachment sale.

4. *Judgments* nunc pro tunc—*Entries—Sheriff's deed, amendment of by court.* —Where a formal entry of a judgment had not been made, but it sufficiently appeared from the record that such judgment had in fact been rendered, an entry of the fact at a subsequent term might be made *nunc pro tunc* by the court. And judgment having been actually rendered so as to support an execution sale and sheriff's deed, the court could afterward permit the sheriff to amend his return so as to show that sale was not made at the return term because the court was not then in session.

5. *Executions, special — Continuance of.*—A special execution in attachment suits may continue after the return term, with like force as general executions on general judgments in attachments or in any other suits.

6. *Sales cannot be impeached collaterally in ejectment.*—Where a stranger purchases lands at an execution sale, it can be impeached only by a direct proceeding, by motion to set aside the sale, or, where a deed has been made, by an action in the nature of a bill in chancery. It cannot be done in an action in ejectment.

*Appeal from Polk Circuit Court.*

*F. P. Wright, E. J. Smith* and *W. P. Johnson,* for appellant.

I. The sheriff's deed to Smith is void on its face and conveys no title. A deed conveying land by virtue of a power must show on its face that the power exists and has been strictly pursued. (Curtis v. Doe *ex dem.*, Breese, Ill., 99; Williams v. Payton, 4 Wheat. 77; Lackey v. Lubke, 36 Mo. 121; Hardy v. Heard, 14 Ark. 185.) The sale shows that in this case the deed was made after the return term, when the writ was *functus officio* and dead. (Smith v. Mundy, 18 Ala. 182.)

II. It is a principle of universal justice that a judgment shall not be rendered against a person, and his property condemned and sold without notice. When this publication was made, in 1863, Groner was in the Confederate lines; and may it not be said here, as in the case of Dean v. Nelson, 10 Walker, 172, that " a notice directed to him and published in a newspaper was a mere idle form," and " as to him, the proceedings were wholly inoperative and void " ?

III. There was no legal evidence that the clerk ever made an order of publication. The printer's affidavit may have been sufficient to prove that he printed the order read in evidence, but not to prove that the clerk actually made the order which was published. The order which the law requires the clerk to make must of course be in writing, and that should have been preserved or its absence accounted for, and in that event its contents proven. This want of proof is not cured by any recitation in the judgment.

IV. The defendant, in support of his deed, relies upon a supposed judgment in favor of Harris against Groner as having been rendered in October, 1863. There was no judgment then entered. It was a bare finding and assessment of the damages; nor was there any judgment entered when the execution issued under which the sale took place. It is submitted whether an execution could legally issue until a judgment was entered up. It is true that in May, 1870, nearly seven years after the assessment of damages, defendant Smith, not a party in the case of Harris v. Groner, appears in court, without any notice to Groner, and suggests that he is a purchaser of the land sold under an execution in that case, and asks that a judgment be entered *nunc pro tunc*, which was then done by the court. The objections to this proceeding are: (1) The defendant in this case (Smith) acquired no control over the judgment by the mere act of purchasing land sold under it. This act gave him no standing in court. (2) A judgment could not, at any time after the term, be entered without notice to Groner, and no notice was given to him on this point. (Martin *et al.* v. Bank of the State, 20 Ark. 336; Wheeler v. Goff, 24 Texas, 660.) No judgment can be entered *nunc pro tunc*, or amendment of a judgment be made, in a case commenced by

attachment and publication where judgment was rendered by default. After the term is passed at which a judgment is rendered, no alteration or amendments can be made except such as are authorized by the statute of *jeofails* and amendments. (See Ashley v. Glasgow, 7 Mo. 320; Hill v. The City of St. Louis, 20 Mo. 584; Brewer v. Dinwiddie, 25 Mo. 351; Hobart v. Pacific R.R. Co., 32 Mo. 423; 45 Mo. 131.) And the statute of *jeofails* does not apply to judgments by default. (See Neidenberger v. Campbell, 11 Mo. 359; R. S. 1835, p. 468, § 7; R. S. 1845, p. 827, § 7; R. C. 1855, p. 1255, § 19; Wagn. Stat. 1036, § 19.)

V. The execution laws of 1855 and 1863 (R. C. 1855, p. 748, § 54; Sess. Acts 1863, p. 20, § 2) have no application to special executions where no levy is necessary, and where the lien is not created by the levy. Those statutes are only to keep in force liens that have been acquired by virtue of a levy of the executions; and the lien, by virtue of the proceedings in Harris v. Groner, occurred by the levy of the writ of attachment, and not by the execution at all. (See Bank of the State v. Bray, 37. Mo. 194; McDonald v. Gronefeld, 45 Mo. 28.)

VI. The land being sold by the sheriff by virtue of a previous levy, after the return day of the execution and without any new process issued to him for that purpose, the sale is void and the purchaser acquires no title. (Morgan v. Rumsey, 15 Ala. 193; Doe *ex dem.* v. Renney, 4 Hawks, N. C., 279; Carsh v. Tozer, 1 Watts & Serg. 525; Hall v. Hall, 5 Verm. 3, 4; Downer v. Hagen, 10 Verm. 418.)

*Abbe* and *J. S. Phelps*, for respondent.

I. The sheriff's deed is sufficiently sealed. The testimony reads, "have hereto set my hand and affixed my seal." The sheriff adopts this as a scrawl: "(Seal.)" This is a sufficient scrawl. (Wagn. Stat. 269, § 5; Underwood v. Dollins, 47 Mo. 259.)

II. The court had the power to enter a judgment *nunc pro tunc*. The court has the inherent power to correct the mistakes and supply the defects of its clerk. (Wagn. Stat. 1034, § 6;

Balch *et al.* v. Shaw, 7 Cush. 282 ; Hyde v. Curling *et al.*, 10 Mo. 359 ; State v. Clark, 18 Mo. 432 ; Glass v. Glass, 24 Ala. 468 ; Allen *et al.* v. Bradford *et al.*, 3 Ala. 281 ; Frink v. Frink, 43 N. H. 508 ; DeKalb County v. Hixon *et al.*, 44 Mo. 341 ; Gibson v. Chouteau's Heirs, 45 Mo. 171 ; Chichester v. Cande, etc., 3 Cow. 39 ; Fay v. Wenzell, 8 Cush. 315.) The sheriff's amendment was properly made. (Webster v. Blount, 39 Mo. 500 ; Scruggs v. Scruggs, 46 Mo. 272.) In the case of Scruggs the return of sheriff was amended by him twenty years after the transaction occurred.

ADAMS, Judge, delivered the opinion of the court.

This was an action of ejectment brought by the plaintiff Groner against the defendant Smith, for lands in Polk county. The Circuit Court gave judgment for defendant, and the plaintiff has appealed to this court. The petition and answer are in the usual form, the answer simply pleading the general issue.

Upon the trial the plaintiff showed title in himself, derived under patents from the United States, and proved rents and profits, and rested. The defendant relied on a sheriff's sale and deed to himself, under a judgment and execution in attachment against the plaintiff as a non-resident of the State, at the suit of one Harris. The writ of attachment was issued by the clerk of the court in vacation, on the 8th day of July, 1863, and on the same day was levied by the sheriff on the property in dispute as the property of the plaintiff ; and the clerk, when he issued the attachment, made out on paper an order of publication against the plaintiff as a non-resident, which was published in the usual way. Instead of filing the original order of publication and sending out a copy for publication, the clerk sent out the original, which it seems was not returned to his office. At the return term of the writ of attachment, a judgment by default was rendered and made final, the suit being on promissory notes. But this judgment, although rendered, was not duly entered of record, but an informal entry was made, which, however, was sufficient to show that it was intended as a final judgment. In the year 1870 the defendant, who was purchaser at the execution sale, applied

to the court to have the informal judgment entered in full *nunc pro tunc*, which was done. The defendant also had the sheriff amend his return on the execution by leave of the court, so as to show by such amended return the levy and failure to make sale at the first term of the court to which the execution was returnable, by reason of the court not being in session; and that after advertising, etc., he sold at the next term, and the defendant became the purchaser. There was no dispute but that the amended return recited the facts as they existed. The sheriff's deed, however, did not recite the reason why the sale was not made at the return term of the execution, and this was relied on as fatal to the deed. The plaintiff also objected to the sheriff's deed because, although in the testimonium he referred to its being sealed, yet the only seal or scrawl by way of seal was the word "seal" in Roman letters included between brackets at the end of his name, thus: "[Seal.]"

The plaintiff also offered to impeach the sheriff's sale by showing that the defendant interfered with other bidders and prevented them from bidding, and he proved that the plaintiff, who was the defendant in the attachment suit, was within the Confederate lines from some time in 1861 to 1865; that he went to Texas in 1861, and was afraid to return home, as the war was raging and he could not do so with safety; that his wife and family had gone to Illinois at the time of the attachment. And plaintiff contends that his absence within the Confederate lines when the suit was brought, and during its pendency, rendered the whole proceeding void.

The objection that the sheriff's deed was not under seal is not tenable. This point has been settled by this court, and it is unnecessary to discuss it here. The word "seal" at the end of the name between brackets, and referred to and adopted in the testimonium, was a sufficient sealing. (See R. C. 1855, p. 352, § 5; Underwood v. Dollins, 47 Mo. 259.)

The omission in the sheriff's deed to recite the reasons why the sale was not made at the first term of the court is not such an omission as to render the deed void. (See Stewart v. Severance, 43 Mo. 322.)

It was improper in the clerk to send out the original order of publication. He should have retained the original as evidence in his office. But there is no dispute about the order being made and published, and this was a substantial compliance with the law. At all events, the plaintiff cannot take advantage of such an error in a collateral proceeding like this.

All courts of record having common-law jurisdiction have the power to make entries *nunc pro tunc*, in furtherance of justice, of such transactions as really took place, provided sufficient evidence appears of record to warrant the entries. In the case of Harris v. Groner, it sufficiently appears that a final judgment had been rendered on the notes at the return term, and yet that final judgment had not been entered in form. Although the formal entry had not been made, it was nevertheless a real judgment on which the clerk might issue a special execution without waiting for the judgment to be entered in form *nunc pro tunc*. That being the case, the sheriff's sale and deed were supported by a real judgment, and the *nunc pro tunc* entry was only intended to furnish proper evidence of this fact.

Sheriffs are always permitted to amend their returns to correspond with the facts as they really existed; and the courts will compel them to do so in support of sales on execution, at the instance of the purchaser. There was nothing, therefore, improper in allowing the sheriff's return to be amended in support of the execution sale.

A sheriff, in conducting sales on special executions in attachment, must look to the general laws governing execution sales. There is nothing in the attachment law on this subject, and we cannot see the force of the objection that this execution had spent its force and was *functus officio* at the return term of the writ, when it appears that no court was held and no sale could take place at that time. Is there any reason why a special execution in attachment should not remain in force in like manner as general executions on general judgments in attachments, or in any other suits? We can see none, and therefore we think the ruling of the Circuit Court on this point was right.

We pass the clerical misrecital in the sheriff's deed of the time

when the execution was directed to him, as this is corrected by the other recitals and is of no consequence.

The evidence offered to impeach the sheriff's sale by showing that the defendant interfered and prevented others from bidding was not admissible in this kind of case. Where a stranger purchases lands at an execution sale, to impeach such sale there must be a direct proceeding by motion to set aside the sale, or, where a deed has been made, by an action in the nature of a bill in chancery. It cannot be done in an action of ejectment. (See Cooper v. Reynolds, 10 Wall. 308.) The same remark may be made in regard to the point raised and discussed with so much zeal and ability by the counsel on both sides, as to the effect to be given to the order of publication against Groner, who, at the commencement of the suit, and during all the time it was pending, was within the military lines of the Confederate States. The question whether the amnesty granted by the President of the United States, which opened the Union lines for the return of rebels, could also open the rebel military lines so as to give efficacy to a publication of the notice against Groner, is too grave to be discussed by us when it does not arise upon the record. All that we could now say would be *obiter dicta*, and might hereafter embarrass the court if a proper case should arise for our adjudication. As there is nothing of the kind in the record of the case of Harris v. Groner, it cannot be considered collaterally in this ejectment. We therefore pass it with the observation that if Groner wishes to raise these issues he must do so by some direct proceeding in the attachment, and perhaps he may do so by motion in the nature of a writ of error *coram nobis*; there being no statutory bar, as we now recollect, limiting the time when such motion may be made. (See Powell v. Gott, 13 Mo. 458; *Ex parte* Toney, 11 Mo. 661.)

Upon the whole record as it stands before us, this judgment must be affirmed. The other judges concur.