Amos C. Stigers *et al. vs.* George Brent, *et al.*

*Judgment against a Lunatic for Debt contracted when of Sound Mind—What a Sufficient Service of Summons against him—Appearance of Lunatic by Attorney.*

A lunatic can be sued at law for a debt which he contracted when of sound mind, and judgment therefor obtained against him. Lunacy is no sufficient ground, in equity, for declaring such a judgment a nullity.

A summons in an action for debt was issued against a lunatic, and it appeared, that the sheriff's deputy to whom the writ was delivered for service, called at the house of the defendant named therein, and was informed, he was a lunatic and could not be seen. The sheriff's deputy thereupon explained the business in hand to the wife of the lunatic then in charge of his person, and exhibited to her the summons. She referred him to her son by whom the lunatic's estate was managed, whom the deputy saw and to whom he showed the writ, and afterwards returned it to the sheriff with an oral statement of what he had done. The sheriff returned the writ endorsed by him, "summoned." At the following trial term two attorneys appeared for the defendant. In a proceeding in equity to set aside the judgment as null and void, it was HELD:

That under the circumstances, a sufficient service of the summons was shown. A lunatic defendant of full age properly defends by attorney, the law presuming him of sufficient capacity for that purpose. The appearance of the defendant in obedience to its command gave the Court jurisdiction over the case.

APPEAL from the Circuit Court for Washington County, in Equity.

This was a proceeding in equity by the appellants, as creditors of one John J. Brosius, to obtain a decree to set aside and have declared null and void, a judgment by confession in favor of George Brent, the appellee, on the

ground that Brosius was of unsound mind when the suit was brought; that the summons issued in the action was not served on him; that afterwards Brent procured from Brosius a power of attorney authorizing the appearance of attorneys to the suit; and that Brent committed a fraud in law against the appellants and other creditors of Brosius, in procuring the power of attorney and obtaining the judgment. Brosius and the duly appointed committee of his estate were made co-defendants with Brent.

The Court below, (PEARRE, J.,) passed a decree dismissing the bill, from which the complainants appealed. The case is further stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, MILLER and ALVEY, J.

*George W. Smith, Jr.,* for the appellants.

Brent seeks to recover the full amount of his claim against Brosius, by reason of his judgment, which the complainants allege was not legally obtained, and they urge, as the judgment is not a valid one, Brent is entitled to no priority under it, and must take with the rest of the creditors, a *pro rata* distribution on his claim, and they maintain that the judgment is not valid, because Brosius was a lunatic at and before the time suit was brought by Brent, and at the time the power of attorney, to confess the judgment, was signed, and has remained so ever since. The proof fully establishes the lunacy—the defendant, Brent, did not even attempt to prove the contrary.

It is well established law in Maryland, that the acts of lunatics and infants are analagous. *Key vs. Davis,* 1 *Md.,* 43; *Chew vs. Bank of Balto.,* 14 *Md.,* 319.

The powers of attorney of infants to confess judgments, are not voidable, but absolutely void and such judgments are set aside. *Saunders vs. Marr,* 1 *H. Blackstone,* 75; *Bennett vs. Davis,* 6 *Cowen,* 393.

But it has been definitely decided that the power of attorney of a lunatic is absolutely void.   *Dexter vs. Hall,* 15 *Wall.,* 26.

The deed of a lunatic is absolutely void.   *Van Deusen vs. Sweet,* 51 *N. Y.,* 381.   And so with a mortgage executed by a lunatic.   *Jacobs vs. Richards,* 5 *DeGex, Man. & Gran.,* 55, and 18 *Beaven,* 300, where the case is fully reported.

The same doctrine is maintained in the well considered case of *Eckstein,* 1 *Parsons' Select Eq. Cases,* 59.

Applying to this case the law, as laid down in the authorities cited, is the judgment obtained by Brent against the lunatic, Brosius, a valid judgment?

It may be argued that the solemn act of the Court makes a judgment binding alike on sane and insane; but is this so?   A lunatic has nothing that the law recognizes as a mind; he has lost that which distinguishes and elevates man above the rest of the animal creation.   The rendition of a judgment against such a creature, ought to have no more effect than the rendition of a judgment against a dead man.   A lunatic is civilly dead.   5 *Bush,* 686; *Eckstein's Case,* 1 *Parsons,* 59.

But independent of Brosius' lunacy, this judgment is not valid, because Brosius was not summoned to appear to the case in which the judgment was rendered.

*Edward Stake,* for the appellees.

There is no irregularity in this judgment.   At the time the notes were given, the maker thereof, John J. Brosius, was of sound mind, and received full consideration for them.   The insanity of Brosius did not commence until a year after the notes were given.

At the time the suit was instituted and judgment rendered, neither the lunatic nor his estate was under the control of the Court.

Stigers, *et al. vs.* Brent, *et al.*

It is manifest from all the authorities, that a lunatic may be sued at law.   *Tomlinson's Lessee vs. Devore,* 1 *Gill,* 345; *Earl of Portsmouth vs. Bagester,* 7 *Dowl. & R.,* 614, (16 *Eng. C. L. R.;*) *Moulten vs. Camroux, H. H. & G.,* 502; *Freeman on Judgments,* sec. 152, *page* 123; *Johnson, Guardian vs. Pomeroy,* 31 *Ohio,* 247.

Even a commission of lunacy does not protect the lunatic from an action.   2 *Maddox Chan.,* 750; *Shelford on Lunacy,* 429; 3 *Robinson's Practice,* 240; 7 *Robinson's Prac.,* 59; *Sanford vs. Sanford,* 62 *New York,* 553.

All the above cases were suits on contracts, made with persons *non compos mentis,* when they were in that condition.   Where a party was sane when the contract was made, evidence of previous or subsequent insanity is immaterial.   2 *Saunders on Pleading and Evidence,* 650; 1 *Dowl.,* 117; 1 *Addison on Contracts,* (3rd *Amer. Ed.,*) 192; 1 *Chitty on Contracts,* (11th *Amer. Ed.,*) 189.

The suit was properly brought and defended.   Where one is *non compos mentis,* he shall defend by guardian, if within age, or by attorney, if of full age.   2 *Saunders on Pleading and Evidence,* 650; 1 *Chitty on Pleading,* (14th *Amer. Ed.,*) 551; 1 *Tidd's Practice,* 92; 5 *Bacon's Abridgment, Title Idiots,* 41.; *Shelford on Lunacy,* 396.

A lunatic retains all his civil rights in his own person, until found by inquisition to be of unsound mind.   *Bullen and Leake's Precedents,* 6; 2 *Chitty Pr.,* 12th *Ed., part* 4, chaps. 10, 11, 13; *Gleddon vs. Treble,* 9 *Com. Bench, N. S.,* 367; *Rock vs. Stake,* 7 *Dowl.,* 22.

The defendant Brosius, having been regularly returned summoned, and his appearance to the action by attorneys proper, no inference can be made of fraud or collusion against him.   The sheriff's return imports verity, and there is no evidence in the cause to contradict it.   *Watson on Sheriffs,* 72.

The bill of the complainants does not even allege that there was any fraudulent concert or combination between

the plaintiff, Brent, and the sheriff, or the attorneys in the cause; or that, by reason of the rendition of the judgment, Brosius has been rendered liable for the payment of a debt, which *ex æquo et bono* he is not bound to pay; or that he was deprived of an opportunity of making a meritorious defence to the action, which he would have made if apprised of its pendency; or that if the judgment were now open, he has any such defence to make. *Fowler vs. Lee,* 10 *Gill & Johnson,* 362.

The complainants are not entitled to any relief at the hands of a Court of equity. They had knowledge of the mental unsoundness of Mr. Brosius from the time it commenced, nearly two years before Brent instituted his action, and were creditors at that time. None of them reduced their claims to judgments, or instituted any proceedings to subject the estate of the lunatic to the control of the Court.

Mr. Brent instituted his action to the next term of Court succeeding the date his notes became due, and his priority is the result of *diligence,* and without fraud or imposition upon either the debtor or his other creditors. *Kearney vs. Sascer,* 37 *Md.,* 264; *Wood vs. Patterson,* 4 *Md. Ch. Dec.,* 335; *Little vs. Price,* 1 *Md. Ch. Dec.,* 182; 2 *Story's Equity Juris, sec.* 1753.

If the complainants were entitled to any relief from this judgment, they had ample remedy at law. The judgment of a Court is subject to its control during the term, and could have been stricken out on motion. If they are parties interested, they are concluded by the judgment. *Townsend, use of Chew vs. Summers,* 31 *Md.,* 247; *Andrews vs. Devries, et al.,* 26 *Md.,* 223; *Mailhouse vs. Inloes,* 18 *Md.,* 328; *McKenzie vs. B. & O. R. R.,* 28 *Md.,* 161.

The question of lunacy has nothing to do with the interference of the Court in this case. If there be no fraud, or no undue advantage be taken, lunacy is not of itself an adequate ground to set aside a transaction. *Kerr on*

*Fraud,* 146; 1 *Story's Eq. Juris., secs.* 199, 202, 236, 237; *Shelford on Lunacy,* 419, 429; *Hull vs. Warren,* 9 *Vesey,* 605; *Fonblanque's Equity,* 46; 5 *Bacon's Abridgt.,* 21.

BRENT, J., delivered the opinion of the Court.

The bill in this case is filed by the appellants, as creditors of a certain John J. Brosius, to set aside a judgment rendered against him in favor of the appellee, George Brent, on the 12th day of February, 1877, by the Circuit Court for Washington County.

The cause of action was two promissory notes given by John J. Brosius to the appellee for money loaned, the one, dated July 1st, 1874, being for $2000, payable two years after date, and the other, dated November 1st, 1874, being for $1000, payable twenty months after date. Shortly after the maturity of both notes, suit was brought upon them to the November term, 1876, of the Circuit Court for Washington County, and judgment obtained at the following term, which commenced in February, 1877.

On the 23rd of the same month of February, and eleven days after the rendition of this judgment, Clarence Brosius filed a petition on the equity side of the Court for a writ *de lunatico inquirendo* against the said John J. Brosius. The writ was issued, and an inquisition taken under it and returned on the 10th of March following, the jury finding that Brosius was then a lunatic, without lucid intervals, and had been so since the 1st of August, 1875.

A large amount of testimony has been taken in the case, and the soundness of Brosius' mind at the times he borrowed the two sums of money mentioned from the appellee and executed these notes, has not been questioned or doubted. The good faith and fairness of this transaction is conceded on all sides.

Nor can it be questioned that he afterwards became of unsound mind, and was so at the time the suit of the

appellee was brought, and the judgment in question obtained. The proof establishes these facts very conclusively.

The bill does not charge any actual fraud, collusion or conspiracy, but alleges that the judgment was improperly obtained, and unless it is declared void by the Court in the exercise of its equity powers, the appellee will have a preference in the distribution of the estate of Brosius, and a fraud in law will thereby be committed upon the rights of the complainants as creditors.

Three objections have been urged against the validity of this judgment. The first, that a judgment cannot be rendered against a lunatic. The second, that no summons was served, and the third, that the attorneys who appeared in the case and confessed the judgment, had no sufficient authority to do so.

In this case no question arises upon the fairness or validity of the notes, which are the foundation of the judgment. Their consideration was for money loaned, and they were signed and delivered by Brosius, a considerable time before his mind became impaired from business troubles and lunacy supervened. The naked point is presented whether a lunatic can be sued at law for a debt which he contracted when of sound mind, and a judgment therefor obtained against him.

Upon this point all the authorities agree, unless where some statute intervenes to prohibit it. In this State no such statute exists.

In the case of *Tomlinson's Lessee vs. Devore,* 1 *G.,* 345, this question seems to have been for the first time presented for the decision of this Court. It was there contended that a Court of law had no jurisdiction to render a judgment against a lunatic, and that the exclusive control over his person and property had been given to the Court of Chancery by the Act of 1785, ch. 72, now embodied in the Code, Art. 16, under the sub-title "*Non*

*compos mentis.*" The case of *Brasher vs. Cortland*, 2
*John. Ch. Cas.*, 403, was relied upon as authority, but the
Court in its opinion shows that the decision of Chancellor
KENT in that case was made under the peculiar provisions
of a statute of New York, which were not to be found
embodied in our Act of 1785. They sustain the jurisdiction
of a Court of law, and held that the judgment against
the lunatic was valid, and that a sale, under an execution
issued upon it, passed a good title to the purchaser.
Upon the validity of such a judgment, where not prohi-
bited by some statute, they say on page 347 (1 *G.*,) "the
authorities, both in this country and England, are conclu-
sive."

Among the English cases we will refer only to the
case of *Bagster and others vs. Earl of Portsmouth.* 7 *Dow.
& Ry.*, 614. This was an action of *assumpsit* against a
lunatic, and although the main question in the case was,
whether a lunatic could contract for necessaries and
whether the items charged in the account, which was the
cause of action, could be considered as necessaries, yet the
validity of the judgment was at issue, and it was upheld
by the Court of King's Bench, all the Judges concurring.

The text books are also agreed upon the point. In
*Freeman on Judgments, page* 123, *sec.* 152, it is said,
"while an occasional difference of opinion manifests
itself in regard to the propriety and possibility of binding
*femmes covert* and infants by judicial proceedings, in
which they were not represented by some competent
authority, no such difference has been made apparent in
relation to a more unfortunate and more defenceless class
of persons; but by a concurrence of judicial authority,
lunatics are held to be within the jurisdiction of the
Courts. Judgments against them, it is said, are neither
void nor voidable, they cannot be reversed for error on
account of defendant's lunacy. * * * In a suit against
a lunatic, the judgment is properly entered against him,

and not against his guardian." See also, *Shelford on Lunatics, pages (m.)* 407 *and* 429, and 3 *Robinson's Practice, p.* 240, *par.* 3, and English authorities there cited.

It is to be said of the case of *Eckstein's Estate, Select Equity Cases by Parsons, p.* 59, which was so strongly relied upon and urged on the part of the appellants, as was said by this Court, in 1 *Gill,* of *Brasher vs. Cortland,* It was decided upon the construction given by the Court to the particular statute of Pennsylvania, which is very similar in its provisions to the statute of New York, under which the decision of Chancellor KENT was made in the case above referred to. It is clearly inapplicable, and we cannot accept the decision or the reasoning of the Court as an authority to govern the case before us.

We have no difficulty in reaching the conclusion, upon the objection of *lunacy*, that it is no sufficient ground for declaring this judgment a nullity. The jurisdiction of a Court of law to render judgment against a lunatic defendant, is too well settled to be now questioned, and particularly in this State, since the decision of *Tomlinson's Lessee vs. Devore.*

But it is claimed that there was no service by the sheriff of the " summons." The proof in the case does not sustain this objection. The writ is returned by the sheriff " summoned," and that endorsement upon it remains unchanged. The familiar rule of law is, " that credence is to be given to the return of the sheriff; so much so that there can be no averment against the return in the same action." *Watson on Sheriffs, p. (m.)* 72. There appears to have been no step taken to have this return amended, if false, nor has the sheriff been examined as a witness to prove there was error in it. Conceding the service of the summons as testified to by the deputy sheriff was not a sufficient service, yet he says he returned the writ to the sheriff unendorsed by him, and stating to him what he had done towards serving it. The return is in the sheriff's

Stigers, *et al. vs.* Brent, *et al.*

hand-writing, and the presumption in law is in favor of its correctness. The proof in the case is not inconsistent with this presumption. The sheriff may have served it himself, and there is no proof to show that he did not, but even adopting the view of the appellants' counsel, that the only steps taken to serve the writ were those testified to by the deputy sheriff, we think all the circumstances taken together show a proper service. The defendant was a lunatic, and the deputy sheriff after going into his house and being told that he could not see Mr. Brosius on account of his condition, informed Mrs. Brosius of his business and showed her the summons, whether she read it or not he cannot say, she referred him to his son, Mr. Clarence Brosius, as the person who " had been appointed his agent to attend to his business." The deputy, upon his return to town, meeting Mr. Clarence Brosius, showed the summons to him. Mrs. Brosius testified that her husband Mr. Brosius, had remained under her charge continuously since his mental troubles began. The deputy fully informed the sheriff of what he had done, and handed the writ to him. It is afterwards regularly returned to the Court endorsed by the sheriff " summoned." At the following trial term, two of the most respectable and skillful lawyers of the bar enter their appearance for the defendant, Brosius. In this there was no irregularity ; a lunatic defendant of full age properly defends by attorney, and the law presumes him of sufficient capacity for that purpose. 2 *Saun. Plea. and Ev.,* 650 ; 1 *Tidd's Practice,* 92 ; *Shelford on Lunatics,* (*m.*) 396 ; *Freeman on Judgments,* 123, *sec.* 152. We thus see that a knowledge of this summons imparted to the wife of the lunatic, who had charge of him, and to the son who was managing his property, leads to the employment of counsel who appear and defend for him. This, under the circumstances, shows a sufficient service of the summons. The appearance of the defendant in obedience to its command, by attorney, gives the Court full jurisdiction over the case.

Stigers, *et al. vs.* Brent, *et al.*

We shall not inquire whether a lunatic can execute in writing a power to an attorney to appear for him and confess a judgment. That question does not arise. It is apparent that the attorneys who appeared in this case did not do so under the written power of attorney which is exhibited. The judgment differs from the terms mentioned in it. As there is no direct evidence in regard to the manner in which their employment was effected, we infer from the record that their engagement was in the usual mode and not by written power of attorney.

We have failed to discover any fatal defect or irregularity in this judgment requiring the intervention of a Court of equity. There is no allegation or the slightest proof to show, that it was rendered for a debt, which *ex æquo et bono,* the defendant Brosius was not bound to pay, or that he was deprived of making a meritorious defence, or that any such defence could be made if the judgment were now opened. The bill contains no such allegations, nor does it charge, as we have before said, any fraud, combination, or conspiracy to defraud. It seems to rest upon the single allegation, that the judgment of the appellee is a nullity and ought to be set aside, because rendered against a lunatic, and if permitted to stand it will work a fraud in law upon the rights of the complainants as creditors, by giving the plaintiff in it a preference over them in the distribution of the lunatic's estate.

We think the Circuit Court properly dismissed the bill, and the decree appealed from, will be affirmed.

*Decree affirmed.*

(Decided 24th January, 1879.)