HEARD, *by Guardian*, v. SACK *et al., Appellants.*

1. **Insane Persons**: ACTION AGAINST. Process and judgment go against insane persons as against other parties, but they should defend by attorney or guardian.

2. **Judgment against Insane Person**: PURCHASER AT SALE UNDER: WHEN PROTECTED. A purchaser takes a valid title to property who, without notice of the fact of insanity, buys at an execution sale under a judgment rendered against an insane person on personal service, although without his appearance in person, or by attorney or guardian.

*Appeal from Johnson Circuit Court.*—HON. NOAH M. GIVAN, Judge.

REVERSED.

*W. W. Wood* and *Sam'l P. Sparks* for appellants.

The court in refusing to submit to the jury the second issue, as requested by appellants, ignored the question of appellants' notice of the insanity of respondent. In cases of simple contracts, it has always been held that where one has contracted in good faith, without notice of lunacy, equity will not rescind the contract on that ground. *Lancaster Co. Bank v. Moore,* 78 Pa. St. 407; *Mathiessen v. McMahan,* 38 N. J. L. 537; *Lincoln v. Buckmaster,* 32 Vt. 652; *Gauzer v. Skimmer,* 1 McCarter 389; *Elliott v. Luce,* 7 D. G. & M. G. 475; *Wilder v. Weakly,* 34 Ind. 181; *Bullard v. McKenna,* 4 Richd. (S. C.) Eq. 358; *McCormack v. Littler,* 85 Ill. 62; *Mutual Life Ins. Co. v. Hunt,* 79 N. Y. 541; *Fecel v. Guinault,* 32 La. An. 91; *Hally v. Troester,* 72 Mo. 73; *Crawford v. Scovell,* 94 Pa. St. 48; *Rusk v. Fenton,* 14 Bush (Ky.) 413. The appellants were not parties to the suit, and there was no allegation in the petition that they had any notice at the time of their purchase at the execution sale that Heard was insane, and the petition failed, therefore, to state a cause of action. Purchasers at execution sales are protected from these secret vices in judgments, and even

where jurisdiction does not exist, provided they are not manifest on the record. *Hardin v. Lee*, 51 Mo. 241; *Freeman v. Thompson*, 53 Mo. 183; *Kane v. McCown*, 55 Mo. 181; Freeman on Judg., § 509. The judgment should not be reversed because a guardian was not appointed. *King v. Robinson*, 33 Mo. 141. Judgments obtained in good faith are not void, although plaintiff knew of defendant's insanity. *Johnson v. Pomeroy*, 31 Ohio St. 247; *Stigers v. Brent*, 50 Md. 214; *s. c.*, 10 Cen. L. J. 473. An action can be maintained to recover a debt before he becomes a lunatic. *Hines v. Potts*, 56 Miss. 346. The contract of a lunatic is only voidable even when not for necessaries. *Cruce v. Holman*, 19 Ind. 30; *Breckenridge v. Ormsby*, 1 J. J. M. (Ky.) 236; *Sowers v. Pumphrey*, 24 Ind. 231; *Cales v. Woodson*, 2 Dan. (Ky.) 452; *Allis v. Billings*, 6 Metc. 415; *Hovey v. Hobson*, 53 Me. 451; *Arnold v. Richmond Iron Works*, 1 Gray 434; *Fitzgerald v. Reed*, 17 Miss. 94; *Crowther v. Rowlandson*, 27 Cal. 376; *Maddox v. Simmons*, 31 Ga. 512; *Ingraham v. Baldwin*, 9 N. Y. (5 Seld) 42; *Elston v. Jasper*, 65 Tex. 409; *Nichol v. Thomas*, 53 Ind. 42; *Moler v. Tulip*, 40 Wis. 66. The judgment under which appellants purchased, was only voidable at most, and in such cases a purchaser who is a stranger to the record, as in the case under consideration, is protected in his purchase. *Lenox v. Clarke*, 52 Mo. 115; *Gott v. Powell*, 41 Mo. 416; *Vogler v. Montgomery*, 54 Mo. 577; *Whitman v. Taylor*, 60 Mo. 137; *Rumfelt v. O'Brien*, 57 Mo. 570; *Coleman v. McNulty*, 16 Mo. 173; *Holt Co. v. Harmon*, 59 Mo. 165; R. S. 1879, § 3691.

*John J. Cockrell* for respondent.

The deed or contract of an insane person is voidable. *Tolson v. Garner*, 15 Mo. 494; *Crouse v. Holman*, 19 Ind. 30; *Breckenridge v. Ormsby*, 1 J. J. Marsh (Ky.) 236; Pomeroy's Eq. Juris., vol. 2, § 946, p. 465. But the courts of law may render judgments against them and they have no relief therefrom except in equity. *Robertson v. Lain*, 19

Wend. 650; *Clarke v. Dunham*, 4 Denio 262; Freeman on Judg., § 152. Chancery will set aside judgments or solemn acts of record of lunatics where the utmost good faith is not shown. 5 Bacon's Abr., p. 25. F., (see note in fine print); 1 Story's Eq. Juris., §§ 228, 229, p. 251. An insane man is protected by a court of chancery and his deeds and contracts rescinded because he is incompetent to protect himself. Is he any the less competent to protect himself from loss by a sale *in invitum?* The reason of the rule applies as well to a case like this as to an ordinary contract.

PHILIPS, C.—A. J. Heard was the owner of certain real estate in Johnson county, which was sold under judgment of the circuit court of said county, for unpaid taxes. The defendants became the purchasers at said sale of said lands and received a deed therefor. In the tax suit personal service was had on said Heard, and the judgment is admitted by this suit to have been regular on the face of the record. This suit is brought by Heard, through his guardian, to set aside said deed and to restore to him his land, for the reason alleged, that at the time of the accruing of said taxes, as well as the time of service on him, and the rendition of said judgment, and the making of said sale, he was of unsound mind and incapable of transacting such business, etc. Since the sale Heard has, upon due inquest had, been adjudged insane by the probate court of said county. Tender is made in the petition, by plaintiff to defendants of the amount paid by them in said purchase, together with the interest thereon and all costs, etc.

The answer tendered the general issue, as to the allegations of the insanity at the time of the proceedings in the tax suit.

The court submitted issues to a jury touching the insanity, etc. The jury found that the said Heard was insane. Thereupon, the court found the issues for the plaintiff, and rendered judgment as prayed in the petition. From that judgment the defendants prosecute this appeal.

I. We do not deem it material to the determination of this appeal to pass upon the propriety of the issues submitted by the court to the jury, or upon the correctness of the instructions given, though I discover no valid objection to either. The proceeding being one in equity to avoid a judgment, it was optional with the court whether it would submit any issues at all to the jury. It may or may not adopt the finding of the jury. The case comes here on its merits for review.

II. On a careful reading of the evidence, we are satisfied that the court was justified in its conclusion, as to the insanity of Heard. It is a great misapprehension of the law to suppose that, in order to maintain the allegation of the petition, it was necessary to establish either the idiocy or general want of sanity on the part of Heard. The subject may exhibit perfect rationality and mental competency in many particulars, or on general subjects, yet be madly and even irrevocably insane touching some given matter. As Lord Hale says : " There is a partial insanity of mind and a total insanity. Some persons that have a competent use of reason in respect of some subjects, are yet under a particular delusion in respect of some particular discourse, subject, or application, or else it is partial in respect of degrees." Persons laboring under such delusions or insanity, touching some particular subject, often possess a degree of subtlety and acuteness on general subjects, and sometimes on the subject of their dementia, calculated to baffle the skill of the wisest in discovering their infirmity. Lord Erskine aptly expressed this idea in the celebrated Hatfield trial : " Such patients are victims to delusions, which so overpower the faculties, and usurp so firmly the place of realities, as not to be dislodged or shaken by the organs of perceptions and sense. Another class, branching out into almost infinite sub-divisions, under which, indeed, the former and every class of insanity may be classed, is, where the delusions are not of the frightful character, but infinitely various and often extremely circumscribed, yet where imagination (within the

bounds of the malady) still holds the most uncontrollable dominion over reality and fact; and these are the cases which frequently mock the wisdom of the wisest in judicial trials because such persons often reason with a subtlety which puts in the shade the ordinary conceptions of mankind; their conclusions are just and frequently profound, but the premises from which they reason, when within the range of the malady, are uniformly false; not false from any defect of knowledge or judgment, but because a delusive image, the inseparable companion of real insanity, is thrust upon the subrogated understanding, incapable of resistence, because unconscious of attack."

While the evidence shows that Mr. Heard on general subjects, was a man of information and intelligence, comprehending the general relations of things, yet upon religious matters, and the right of the civil government to impose taxation upon its subjects, and the obligation of the citizen to submit thereto, he was *non compos mentis.* He could reason, or rather argue, about this matter from the scriptures, but his perceptive faculties were so obscured or overcast as to make him incapable of a right conclusion. So intense was his delusion, as to the kingdom of Christ, which he believed to be near establishment, and so incorrigible his mania against temporal authority, that he was wholly irrational, uncontrollable, and I think, irresponsible as to any business transaction connected with those subjects. He deemed it sinful to pay tribute, as he termed it, to the temporal powers. And evidently laboring under the delusion that Christ would ultimately restore to him his property taken for taxes, he would take no steps to protect it, nor would he permit any friend to interpose for his protection. Such a man in the particular matter of his dementia, is an imbecile, and as much the subject of protection against himself and any business transactions connected therewith as if he were a raving madman.

III.   What then is the effect of a judgment rendered against such person, on personal service, without the ap-

pearance in person, or by attorney or guardian *ad litem?*
Is it void or simply voidable? Counsel has referred us to
no authority maintaining that the judgment is void; and
we can find none so holding. Taxes are imposed on the
real estate itself. This imposition is the act of the law. It
has not the qualities of a contract. It is imposed without
the assent or concurrence, direct, of the mind of the land
owner. So far as he is concerned, this burden on his estate
exists *nolens volens.* By statute, if such taxes remain un-
paid for a given time, it is made the duty of a collector to
proceed to enforce the payment by suit. Such suit shall be
prosecuted " against the owner of the property    *    *
and all notices and process in suits under this chapter shall
be sued out and served in the same manner as in civil
actions in circuit courts." R. S. 1879, §§ 6836, 6837.
Heard, being confessedly the owner of the land, suit was
properly instituted against him. He was the proper party
upon whom to serve the writ, and the proper party against
whom to render the judgment. Process and judgment go
against the lunatic as against other parties. They should
defend by attorney, or guardian *ad litem,* in the absence of
a guardian proper. *Donallen v. Lennox,* 6 Dana 89, 90;
*Walker v. Clay,* 21 Ala. 797; *Johnson v. Pomeroy,* 31 O. St.
248; *Stigers v. Brent,* 50 Md. 214; *Baumgartner v. Guessfeld,*
38 Mo. 36.

The court then had jurisdiction over the person of the
defendant and the subject matter of the action. On what
principle then can it be maintained that the judgment was
void? Judgments rendered pursuant to the statute for the
collection of taxes stand on the same footing as any other
judgment of the circuit court, and are not assailable col-
laterally for mere irregularities or errors curable on appeal
or writ of error. *Wellshear v. Kelly,* 69 Mo. 343. The
utmost that can be alleged against the judgment is, that it
is voidable. The contracts of non-sane persons, not under
guardianship, are placed by most respectable authorities, on
the same basis as those of infants; and, therefore, by parity

of reasoning, should alike be voidable. *Breckenridge v. Ormsby*, 1 J. J. Mar. 288; *Lincoln v. Buckmaster*, 32 Vt. 652; *Tolson's Admr. v. Garner*, 15 Mo. 497; *Halley v. Troester*, 72 Mo. 73. The error in rendering a judgment against an insane man would not, ordinarily, appear of record, any more than in the case of a judgment against a minor. It is an error of misapprehension of a fact, existing *in pais*, not called to the attention of the court. Such judgment may be reviewed and the error rectified in the court where committed on writ of *coram nobis*. 2 Tidd's Pr. 1136; *Ex parte Toney*, 11 Mo. 662.

To such a motion, or writ of error, there does not seem to be any limitation as to the time in which it may be invoked. *Powell v. Gott*, 13 Mo. 459; *Groner v. Smith*, 49 Mo. 324. But this action is in equity, and is *res inter alios acta*, to set aside the deed made pursuant to a sale under such judgment to a stranger to the record. No doctrine of the law is better settled than that while the title of the judgment plaintiff will be forfeited by a subsequent reversal or vacation of the judgment, yet the title of a stranger who in good faith, purchased before the reversal of the judgment, will not be affected by such reversal. *Gott v. Powell*, 41 Mo. 420; *Vogler v. Montgomery*, 54 Mo. 577. Such purchasers are protected from secret vices in judgments. Where it is sought to vacate a judgment on account of matters extrinsic to the judgment, where the purchaser thereunder was not a party to the judgment, it must be averred and proved that the purchaser had notice of such infirmity; without this he is not affected thereby. *Reeve v. Kennedy*, 43 Cal. 643; *Freeman v. Thompson*, 53 Mo. 185; *Harding v. Lee*, 51 Mo. 241.

Mr. Freeman in his treatise on judgments (§ 152) says: "While an occasional difference of opinion manifests itself in regard to the propriety and possibility of binding *femmes covert* and infants by judicial proceedings, in which they were not represented by some competent authority, no such difference has been made apparent in relation to a more

unfortunate and defenseless class of persons; but by a concurrence of judicial authority, lunatics are held to be within the jurisdiction of the courts. Judgments against them are said to be neither void nor voidable. They cannot be reversed for error on account of defendant's lunacy, the proper remedy in favor of a lunatic being to apply to chancery to restrain proceedings, and to compel plaintiff to go there for justice." The following cases support so much of the text as holds the judgment binding as between the defendant in the judgment and an innocent purchaser. *Johnson v. Pomeroy*, 31 Ohio St. 248; *Tomlinson v. Devore*, 1 Gill (Md.) 345; *Stigers v. Brent*, 50 Md. 214; *Lamprey v. Nudd*, 9 Foster (N. H.) 299; *Foster v. Jones*, 23 Georgia 168.

The cases cited in support of that portion of the text which holds that the only remedy is to ask a court of equity, while the suit for judgment is *in limine,* for a restraining order, are *Robertson v. Lain*, 19 Wend. 650; *Clarke v. Dunham*, 4 Denio 262, and *Sternbergh v. Schoolcraft*, 2 Barb. 153. These last cases, I apprehend, rest upon rulings having for their foundation a special statute of New York conferring this jurisdiction on the chancery court. See the discussion of this subject in *Stigers v. Brent, supra.* Redfield, C. J., with characteristic learning and a strong sense of justice, in *Lincoln v. Buckmaster*, 32 Vert. 652, applies the same rule to lunatics as to infants. He says: " When one is in the state of mental unsoundness, found in this case, he is wholly incapable of making a binding contract, as much so as an infant, or a married woman. Any other view of the case would be absurd, almost. It certainly shocks all our notions, either of justice or reason, and equally of law." He, therefore, holds that a contract of such person, as in the case of an infant, if not within the exceptional cases, may be avoided. The supreme court of New Hampshire, in *Lamprey v. Nudd, supra,* hold to the same doctrine. If the infant may avoid a judgment against him, when his infancy was not disclosed, reason and justice

would apply the rule with equal force to a lunatic. If it had been averred and shown in proof that the purchasers at the execution sale had notice of Heard's mental condition, or were possessed of such facts as would or ought to put a prudent person on his guard in purchasing such property, the judgment of the circuit court might be sustained. *Matthiessen & W. R. Co. v. McMahon*, 9 Vroom (N. J.) 544. But it is neither averred in the petition, nor proved on the trial, that the defendant purchasers had any notice, whatever, of the extrinsic fact relied on for the impeachment of the judgment. It is a case of great hardship that so helpless and unfortunate a man as Heard was, should thus lose his estate. We would save him from being despoiled if the law permitted. But the law is the limit of our discretion. It is an infirmity, I think, in the revenue law that the right of such persons to redeem, within a reasonable time was not reserved; but that was a matter for the legislature. The petition in this case, if desired, may be so amended as to admit proof, if there be any, of defendant's knowledge of Heard's mental condition at the time of their purchase.

The judgment of the circuit court is reversed and the cause remanded. All concur.