EDWARD THOMAS, Respondent, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, April 4, 1892.

1. **Practice, Appellate:** EQUITY: REVIEWING EVIDENCE: DEFERRING TO TRIAL COURT. In equity cases, the appellate court reviews the entire testimony, and, if convinced that a wrong finding was made, will set it aside and enter the proper judgment, but in cases of doubt may defer somewhat to the finding of the trial court.

2. **Equity:** SETTING ASIDE RELEASE: EVIDENCE. One seeking to set aside a release of damages for personal injuries, on the ground that his signature was fraudulently obtained,—the transaction being intended as a loan, and not a release,—has the burden of proof cast upon him; and the evidence in this case is reviewed and *held* to show that after plaintiff's injuries he went to the railway officials, and, with full knowledge, secured the compromise and gave the release without any fraud or deception practiced upon him.

*Appeal from the Grundy Circuit Court.*—HON. P. C. SLEIPP, Special Judge.

REVERSED.

*M. A. Lowe* and *W. F. Evans*, for appellant.

(1) The first count of plaintiff's petition, being addressed to the equity side of the court, should be tried anew by this court. *Benne v. Schnecko*, 100 Mo. 250; *Dale v. Hogan*, 39 Mo. App. 646; *McElroy v. Maxwell*, 101 Mo. 294; *Hardware Co. v. Walter*, 91 Mo. 484; *State ex rel. Walker v. Hurlstone*, 92 Mo. 327. (2) In order to enable a court of equity to set aside or cancel a settlement or release alleged to have been obtained by fraud, the evidence adduced to establish the fraud should be clear and convincing, and perfectly satisfactory. The evidence upon the trial of the first count of plaintiff's petition showed that the settlement was made and the release executed without the fraud of any person, and knowingly by both parties. *Walter v. Railroad*, 16 S. W. Rep. 839; *Dallam v. Renshaw*, 26 Mo. 533, 544; *Webb v. Darby*, 94 Mo. 621; *Page v. Dixon*, 59 Mo. 43; *Chapman v. McIlwrath*, 77 Mo. 38; *Keiser v. Gammon*, 95 Mo. 218; *Jackson v. Wood*, 88 Mo. 76; *Rumbolds v. Parr*, 51 Mo. 592; *Henderson v. Henderson*, 55 Mo. 535, 555; *Jones v. Degge*, 5 S. E. Rep. 799; *Building & Loan Ass'n v. Hetzel*, 103 Pa. St. 507; *Railroad v. Shay*, 82 Pa. St. 199; *Cummins v. Hurlburt*, 92 Pa. St. 165; *Roberts v. Railroad*, 22 Atl. Rep. 174.

*Harber & Knight*, for respondent.

(1) That the trial on the first count of plaintiff's petition was a trial in equity does not authorize an appellate court to disregard the findings of fact made by the lower court, but, on the contrary, a reviewing tribunal will defer to the findings of the chancellor; else why the effete incumbrance of a trial judge, or the

by-play of taking his judgment, when judgment they had none. The lower court saw the witnesses, looked into their countenances, observed their conduct on the stand, and, in fact, saw what this court can only read about. *Blair v. Railroad*, 89 Mo. 393; *Cox v. Cox*, 91 Mo. 71; *Mathias v. O'Neil*, 94 Mo. 520; *Sayer v. Devore*, 99 Mo. 437; *Hard v. Foster*, 98 Mo. 297; *Benne v. Schnecko*, 100 Mo. 250. (2) "Equity will interfere in its discretion, in order to prevent intolerable injustice and not only in cases where there has been fraud, but also in cases of surprise, mistake, the providential execution of an instrument without time for proper or mature reflection, or where parties contract on the basis of the existence of certain facts, and such facts do not exist," [or "where there has been mistake of such a character as shows that there was no *aggregatis mentium*." *Blair v. Railroad*, 89 Mo. 392; 1 Story's Equity Jurisprudence [ Red. Ed.] secs. 138, 142; *Williams v. Williams*, 16 Ves. 82; *Tyson v. Tyson*, 31 Md. 134; *Evans v. Llewellin*, 1 Cox, 333. (3) The very fact that the defendant procured a complete release not only for loss of time, but for all damages for the personal injury and expenses resulting from the accident, for the paltry sum of $25, is of itself, and on its face, sufficient evidence to justify the circuit court in reaching the conclusion it did reach; for such is the doctrine in *Blair v. Railroad*, 89 Mo. 393, and authorities cited in paragraph 3 of the opinion.

GILL, J.—On the fifth day of December, 1888, the plaintiff, while working in the yards of the defendant at Trenton, Missouri, was caught between a passenger coach and a transfer platform and injured. On the seventeenth of that month he went to the office of the defendant's superintendent, at Trenton, and made what purports to be a settlement with defendant

through its superintendent, C. L. Ewing, for all damages resulting from the injury he had sustained on the said fifth day of December, 1888. The plaintiff, at the time of the settlement, executed and delivered to the defendant a release for all injuries and damages so sustained, and received from the defendant $25, the amount of money agreed upon between himself and Mr. Ewing.

On the twenty-seventh of November, 1889, the plaintiff commenced this action, asking in the first or equity count of his petition, that the court, as a court of equity, cancel and hold for naught said release, and alleging in said equity count that said release was obtained by the fraud of said Ewing, and that the same was intended only as the evidence of a loan of money made by said Ewing to the plaintiff. This equity branch of the case was followed by a count in law for damages. The equity count was first tried, the court calling to its aid a jury. There was a finding and judgment thereon in plaintiff's favor, and the court set aside and held for naught the alleged settlement. The cause then proceeded to trial on the count for damages, which resulted in a verdict and judgment for plaintiff in the sum of $395, and defendant brings the case here by appeal.

We find it necessary only to consider the ruling of the lower court on the first or equity count of the petition. In so doing we are bound by the decision or finding of facts reached by the circuit judge. It is our duty in issues of this character to review the entire testimony, and, if convinced that a wrong finding and judgment was made, a further obligation rests on us to set aside the same and enter, or cause to be entered, a proper judgment. The rule is now well settled in equity cases, that if, on an investigation, the appellate

court shall find the evidence so evenly balanced that serious doubt arises as to where the truth is, then the appellate court will defer somewhat to the finding of the lower court; in other words, will resolve the doubt in favor of the finding and judgment below. However, as said by Judge SHERWOOD in *Benne v. Schnecko* (100 Mo. 258), it is not meant by this "that we have abdicated our supervisory control over questions of fact in equity causes; it is only meant that when there is conflict, or where the testimony is evenly balanced, and the finding of the chancellor appears to be correct, then we will so far defer to his finding as to sanction it by our affirmance; that and nothing more."

The question here is, was the trial judge justified under the evidence in setting aside and holding for naught the writing which purports to be a settlement of plaintiff's claim for damages? After a patient, careful consideration of this record we must answer this in the negative. The plaintiff was injured on the fifth day of December, 1888, whether by his own or the defendant's fault, or the extent thereof, need not here be discussed. However, it may be said, that the liability of the railway company is very questionable, nor do the injuries appear to have been of any serious character. Anyhow it seems clear that in about a week or ten days thereafter the plaintiff was seen inquiring for the defendant's superintendent at Trenton with a view of making a settlement for his alleged damages. According to the testimony of plaintiff himself he went more than once to the superintendent's office before he was able to get any proposition. Ewing, the superintendent, denied any liability and was, it seems, indifferent whether he settled with plaintiff or not. However, on December 17, just twelve days after plaintiff's alleged injuries, plaintiff sought and found Ewing at his (Ewing's) office, the settlement was agreed on, and on

payment of $25 the following receipt or statement of settlement was made:

"For the consideration of twenty-five dollars ($25.00) received of *The Chicago, Rock Island & Pacific Railway Company*, I hereby release and discharge said company from all claims and demands against it, and especially from all liability for loss or damages to me by reason of all personal injuries to date, and especially all injuries received while working on an extra gang of the said company at Trenton, Missouri, wherein I was caught between a coach and the platform to a freight house, causing the sprain of my right arm and other injuries, which occurred on or about the fifth day of December, A. D. 1888.

"Received payment, Trenton, Mo., 188—,

"ED THOMAS,   [Seal.]

"The above was read to, and signed by, the said Edward Thomas, in our presence, at Trenton, Missouri, on the seventeenth day of December, 1888.

"W. A. RANDALL,
"F. H. REED."

The matter then at the institution of this suit appeared as the adjustment of a disputed claim, wherein, for an acquittance of all liability, defendant paid the plaintiff the sum of money named in the above voucher. The burden then rested on the plaintiff to prove that it was not what it appeared to be. He admitted signing the instrument and that it was read to him, but alleged his signature was fraudulently procured. The burden of this issue rested on the plaintiff. He testified that he received the $25.00 from the railroad, but that it was a mere *loan;* that the superintendent advanced the money to pay for some work he might do for them in the future, yet strange to say, he testified that the company refused to give him employment. Plaintiff's evidence as given at the trial is replete with improba-

bilities and self-contradictions.   For example:  He testifies that he was totally unconscious for a period of about eight or ten weeks from the time the car struck him, or, to use his own words, that "it was about eight weeks after I got hurt until I woke up.   That time is pretty near a perfect blank to me, and I have no recollection of anything that happened  during  the  eight weeks."   He says in another place, "I wasn't conscious for about nine or ten  weeks, was  confined at home ten weeks before I got  down  to Mr. Ewing's." Yet it is beyond question  that  he did get to Ewing's office, and made this settlement on the twelfth day after his injury.   Several witnesses testify  to  the fact that he was out and about in less than  ten  days after the accident.   He swore that he had not less than eight weeks of mental darkness—oblivion—and yet details how he was taken home, how  he was treated and by what doctor, how often the physician came to see him, how he was nearly frozen when they carried him home, etc.   This self-condemned  witness furnished  by his oath all the evidence on plaintiff's side of the issue. To sustain defendant, some eight unimpeached witnesses testified, and all of them contradicted the plaintiff.  Ewing, the superintendent, Randall, his clerk, Reed, a young hotel clerk at Trenton, and Miss Trindle, stenographer,—all of whom were present at the superintendent's office on December 17, when the settlement was affected, gave a  clear, explicit and satisfactory account of Thomas' soliciting Ewing to compromise and pay him something.   Three of the four testify that the writing signed by Thomas was, before signed, read over to Thomas, and all concur that nothing was said about securing a loan, but the whole matter was that Thomas was in need, that he had lost time, etc., and he importuned Ewing to pay him something.   In other words, these witnesses testify in harmony with the

voucher signed by Thomas as well as in harmony with every undisputed fact in the case. Besides witnesses, Williams, McKeen, Davis and the attending physician, Patton, all contradict the plaintiff in several important particulars. Some of these were his nearest neighbors, and they related conversations had with Thomas after December 17, in which he admitted the settlement with the railroad company. The testimony of these witnesses, too, shows beyond manner of doubt, that there was no unconscious period following the injury on the fifth of December. The sum and substance is, that plaintiff Thomas, while working in defendant's yards at Trenton, was slightly injured by a car jamming him against the transfer platform; he was laid off for a week or ten days, then went to the railway officials and with full knowledge secured this settlement or compromise; there was no fraud or deception practiced. The claim he makes is entirely without merit—an afterthought.

The trial court ought to have adjudged the first count in favor of the defendant. We, therefore, reverse the judgment. All concur.