BRYCE CRAWFORD *et al.*

*v.*

WILLMENA C. THOMSON *et al.*

*Filed at Mt. Vernon April 1, 1896.*

1. JUDGMENTS—*confession by insane person—sale on voidable judgment —setting aside.* Judgments confessed by a person insane at the time, with a sale under execution thereon to the persons in whose favor they were confessed, are properly set aside.

2. JUDICIAL SALES—*sale on voidable judgment to innocent person sustained.* A sale of the land of an insane person upon execution issued on a judgment confessed by him while insane, will not be set aside when it was made to a person not a party to the judgment, and who had no knowledge of the insanity of the judgment debtor.

WRIT OF ERROR to the Circuit Court of Perry county; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding.

HAMMACK & EDWARDS, for plaintiffs in error.

W. K. MURPHY, and JOHN BOYD, for defendants in error.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

This was a bill in equity, brought by Willmena C. Thomson, John Thomson, and others, widow and heirs-at-law of Alexander Thomson, deceased, on the 5th day of February, 1887, against Bryce Crawford, John and Janet Thomson, and others, to set aside certain judgments confessed by Alexander Thomson before the clerk of the circuit court of Perry county in favor of certain persons, and to set aside a sale of a certain forty-acre tract of land in Randolph county on execution issued on one of said judgments in favor of John and Janet Thomson, and to set aside a sale of certain other lands in Perry county on execution issued on the same judgment. Answers were put in to the bill, to which a replication was filed. A cross-bill was also filed, in which affirmative relief was prayed. A hearing was had on the pleadings and evidence, and a decree entered in favor of the complainants as prayed in the bill, and the cross-bill was dismissed.

It appears from the record that on March 25, 1879, Alexander Thomson confessed judgment, in vacation, before the circuit clerk of Perry county, against himself and in favor of Isabella Waddle and her husband, for $750.70 and costs. On the same day he confessed judgment in the same court against himself and in favor of Agnes Smith, for $751.70 and costs, and at the same time and place he confessed judgment in favor of Mary Marshall and others, for $751.20. The following judgments were also confessed by him: A judgment for $1138.99 and costs, in favor of John and Janet Thomson, April 17, 1880; a judgment in favor of Margaret Tyhurst, for $211.57, on the same date; a judgment on the same day for $105.83 and costs, in favor of the heirs of James Thomson; a judgment for $786.46 and costs, in favor of the heirs of Andrew Thomson. None of the plaintiffs were residents of the United States except Margaret Tyhurst. It also

appeared that on the 29th day of October, 1886, the attorney of John and Janet Thomson obtained an execution upon the judgment in their favor, directed to the sheriff of Randolph county, which was levied on the north-west quarter of the south-west quarter of section 6, township 4, south, range 5, west of the third principal meridian, which was advertised for sale under said execution and fee bill, and on the 27th day of November, 1886, sold at public sale to Bryce Crawford for $400, in partial satisfaction of the judgment and costs. It further appeared that on request of the attorney of John and Janet Thomson, on the 31st of December, 1886, an execution was issued on said judgment, directed to the sheriff of Perry county, and under said writ the sheriff levied on all the interest of Alexander Thomson, then deceased, in the lands hereafter described, and on the 5th of February, 1887, said sheriff, after due notice, sold said lands at public sale to John and Janet Thomson for the following sums: The north-east quarter of the south-east quarter of section 22 for $100; the south-east quarter of the south-east quarter of section 22 for $100; the north-east quarter of the north-east quarter of section 27 for $100; the north-east quarter of the south-east quarter of section 27 for $325; the south-east quarter of the south-east quarter of section 27 for $325; the south-west quarter of the south-east quarter of section 27 for $313.24. The sale was in full satisfaction of the judgment aforesaid. All of said lands are in township 4, south, range 1, west.

Alexander Thomson died December 10, 1882. It was charged in the bill that for a period of ten years before his death he was insane, and had a delusion that he owed certain persons in Scotland, whom he called his heirs. On the hearing much evidence was introduced in regard to his mental condition at the time the judgments were confessed, and the principal question presented by this record is, whether the finding of the court that Alexander Thomson, at the time the judgments were confessed, was

insane and wholly unfit to transact ordinary business, is sustained by the evidence introduced on that branch of the case.

George W. Smith, a physician of fifty years' practice, testified that he knew Alexander Thomson from 1880 to 1882; that he was called to see him professionally, and upon examination found him suffering physically from insomnia and mentally from hallucinations caused by organic derangement of the cortex of the brain; that in the opinion of the witness Thomson was of unsound mind and incapable of transacting business. Dr. J. Layman, who knew Thomson from 1872 until he died, in 1882, and who had treated him as a physician for several weeks and done business with him, testified that during that time he was of unsound mind and not in a condition to transact business. Dr. T. M. Sams testified that he had known Thomson for a number of years but had never treated him; that he regarded him "cranky;" that on certain occasions he acted like a wild man. L. J. Farmer, the coroner of Perry county, testified that he had known Thomson since 1868; that he regarded him of unsound mind. Henry Clay, a lawyer of Perry county, who had known the mental condition of Thomson since 1860 and who had transacted business for him, testified that from his general conduct, demeanor, actions and conversation he regarded him of unsound mind. Dr. Ward, who had known Thomson in 1879 and 1880, testified that from his general conduct, actions and conversation he regarded him of unsound mind, and not of sufficient mental capacity to transact business in an intelligent manner. W. N. George, a farmer, who resided near Thomson, testified that from his talk he did not "regard him right." John A. Gee, another farmer who resided near him for a number of years, testified that from his general conduct, actions and conversation he thought he was not of sound mind; that he was in that condition eight or ten years, and grew worse as he grew older. R. G. Williams, county

clerk of Perry county, testified that he knew Thomson from 1877 to the time of his death, and that his mind was unsound. G. W. Clark, deputy sheriff, testified to the same effect. Other evidence of a similar character was introduced. Some evidence was introduced in behalf of the defendants that Thomson was capable of transacting his business, but it will serve no useful purpose to go over the evidence here.

From an examination of all the evidence found in the record we are satisfied that the finding of the court that Alexander Thomson, at the time the judgments were confessed, was of unsound mind and unfit to transact ordinary business is sustained by the evidence.

Section 15, chapter 86, of our statute, entitled "Lunatics," provides that every contract made with an idiot, lunatic or distracted person before he or she has been adjudged an idiot, lunatic or distracted, may be avoided, except in favor of the person fraudulently making the same. Under this statute the legal representatives of Alexander Thomson had the right to institute proceedings to set aside his acts which resulted in the judgments. And we think the decree of the court vacating and setting aside the judgments confessed by him when he was of unsound mind was justified by the evidence. So, also, the decree of the court vacating the sale of the lands in Perry county on execution issued on judgment in favor of John and Janet Thomson, wherein they became the purchasers, was, in our opinion, properly vacated and set aside.

But, as has been seen, an execution was issued on the judgment in favor of John and Janet Thomson on October 29, 1886, directed to the sheriff of Randolph county, and levied by the sheriff on the north-west quarter of the south-west quarter of section 6, township 4, south, range 5, west. The land was duly advertised, and on November 27, 1886, sold at public vendue to Bryce Crawford for $400. This sale was also set aside. Crawford, it appears

from the evidence, was acquainted with Alexander Thomson in his lifetime and transacted some business with him, but we find no evidence in the record that he knew that Thomson was of unsound mind when the judgment was confessed, or that he knew that the judgment upon which the sale was made was erroneous or invalid in any respect. The law is well settled, that when a judgment is reversed the parties to the judgment are restored to their original rights, so far as can be done without prejudice to the rights of third persons. If the plaintiff in the action has purchased in property on the judgment, and still retains it, the defendant may recover the property in an appropriate action. But the rights of third parties are not affected. Their title to property acquired under an erroneous judgment is not divested by its reversal. (*McJilton* v. *Love*, 13 Ill. 486.) Here, although Thomson was insane, he was liable to be sued, and a judgment could be rendered against him, (Freeman on Judgments, sec. 152; *Stigers* v. *Brent*, 50 Md. 214;) and before any proceedings had been instituted to set aside the judgment upon a sale on execution issued on the judgment by the sheriff of Randolph county, any person not a party to the judgment, who had no notice of its invalidity, had a right to bid at the sale and would be entitled to retain the fruits of his purchase, although the judgment upon which the sale was predicated might afterwards be set aside. Here the purchaser, Crawford, was not a party to the judgment, and, so far as appears from the evidence, he had no knowledge of its invalidity. He therefore had the right to become a purchaser at the sale, and, being an innocent purchaser, he is entitled to protection.

As to Bryce Crawford the decree will be reversed, with directions to dismiss the bill as to him. In all other respects it will be affirmed.

*Decree reversed in part and in part affirmed.*