BRADLEY *et al.* v. WELCH *et al.*, *Appellants.*

1. **Practice:** ENTRY OF APPEARANCE BY ATTORNEY: EJECTMENT. Plaintiffs, claiming to be the owners of eighty acres of land, filed ten suits in ejectment against persons in possession of different lots, and writs of summons were duly issued in these cases. The attorneys employed to defend them entered into stipulation with plaintiffs, which provided that in two cases, to be tried as test cases, and "in suits now brought and about to be brought," all who are now defendants, and who shall be made defendants, or who

Bradley v. Welch.

have not already been served with summons, enter their appearance and waive service of summons. *Held* that another case against defendants, in which the petition was simply lodged with the clerk of the court, with directions not to issue a writ of summons on it, and which case had never been docketed as a pending cause, was not "a suit brought," within the meaning of the stipulation.

2. ——: ——: ——. After the service of summons in the ten cases, a public meeting of the citizens of the locality of the litigation was held, and a committee appointed to employ attorneys to defend the cases. The members of the committee were not aware of the fact that any other petition had been left with the clerk, nor, in employing the attorneys, did they profess to make a contract for any person who might thereafter be sued. *Held* that the fact that defendants attended the meeting at which the committee was appointed, and contributed to the fund to defend the suits, and that there was a general understanding that the attorneys would, for a reasonable fee, defend any other suits that might be brought, was not sufficient to constitute them defendants' attorneys.

3. Attorney: GENERAL RETAINER: AUTHORITY OF. It seems that an attorney at law has no authority, by virtue of his general retainer, to waive service for his client of original process, by which the court acquires jurisdiction, for the first time, of the person of the client.

4. Foreign Judgment, Defenses in Action on. The defendant in an action on a foreign judgment may plead and show as a defense that in the original suit no service was had upon him, and that his appearance, entered by an attorney, was unauthorized.

5. Domestic Judgment: UNAUTHORIZED APPEARANCE OF ATTORNEY: RELIEF FOR. A domestic judgment, entered without the service of summons on the defendant, and on the unauthorized appearance of an attorney may, in the absence of ratification on the part of the defendant, be set aside on motion timely made in the court which rendered the judgment, and the relief will be granted, regardless of the question whether the attorney is responsible or not.

*Appeal from Pettis Circuit Court.*—JOHN MONTGOMERY, ESQ., Special Judge.

REVERSED AND REMANDED.

*W. S. Shirk* for appellants.

(1)   The modern doctrine is, that a judgment rendered against a party who has not been served with summons, upon the unauthorized appearance of an attorney, whether such attorney is able to respond in damages or not, is, at least, voidable (and in many jurisdictions absolutely void), and will be set aside on motion. *Reynolds v. Flemming*, 30 Kan. 106, and authorities cited; *Kepley v. Irwin*, 14 Neb. 300; *Bruekman v. Shaffer*, 23 Kan. 528; *Anderson v. Hawke*, 3 N. E. Rep. (s. c. Ill.) 566; *Baker v. O'Riordan*, 65 Cal. 368; *Sperry v. Reynolds*, 65 N. Y. 179; *Macomber v. Peck*, 39 Iowa, 356; *Mellops v. Doan*, 31 Iowa, 400; *Shelton v. Tiffany*, 47 U. S. (6 How.) 163; *Critchfield v. Porter*, 3 Ohio, 518; *Lawrence v. Jarvis*, 32 Ill. 304; *Clark v. Little*, 41 Iowa, 497; *Price v. Ward*, 1 Dutch (N. J.) 225; *Pennywett v. Foote*, 27 Ohio St. 600; *Dobbins v. Dupree*, 39 Ga. 394; *Wiely v. Pratt*, 23 Ind. 628.   See, also, note to *Benton v. Lyford*, 75 Am. Dec. 144, on pages 146–149.   The refusal, by the lower court, to give the declaration of law prayed for by defendant, embodying the doctrine enunciated in the above authorities, serves to show that the court overruled the motion upon a theory of the law directly opposed to this.   (2) The relation of attorney and client arises out of contract. There is no contract unless the minds of the parties meet.   The undisputed evidence in this case shows that the defendants were never served with process (in fact, no process was ever issued), and never had any knowledge or notice that a suit had been instituted.   It also shows that they never intended to employ an attorney to represent them in any case which had been, or might be, brought, nor ever authorized any one else to do so for them.   Not only does Mr. Blandon so testify, but every other witness who was present at the meeting of the Smithton people.   The relation of attorney and

client between Blandon and Snoddy & Sinnett did not arise from the employment of Sinnett & Snoddy, by the committee appointed by that meeting. (3) Sinnett, one of the attorneys who acted for Cook, and other parties who had been served with process, testifies that he never understood that he had authority to act as an attorney in any case except the ten cases on the docket at the time, and that at the time he signed the stipulation, under which the judgment herein was rendered, he stated to the plaintiffs' attorney that they (Messrs. Snoddy & Sinnett) had received no authority from the committee to act for any other claimants not sued. Where neither client nor attorney intends to employ or be employed, there can be no such thing as an employment, or authority to act as an attorney.

*G. P. B. Jackson* for respondents.

(1) Whether or not an appearance by an unauthorized attorney, and the judgment rendered thereon, is conclusive against the defendant has not been decided in this state, although this court has held that such appearance and judgment are not void. *Warren v. Lusk*, 16 Mo. 102; *Baker v. Stonebraker*, 34 Mo. 172; *Marx v. Fore*, 51 Mo. 73; *Rumfelt v. O'Brien*, 57 Mo. 572; *Tippack v. Briant*, 63 Mo. 580. (2) Under any circumstances the presumption exists that the attorney was authorized, and this presumption is conclusive in a collateral attack, but in any case the burden is on the complaining party to show want of authority. Cases cited above; cases cited in appellant's brief; Weeks on Attorneys, pp. 342 to 355; Freeman on Judgts., secs. 128 and 499. (3) Such judgment is conclusive, unless the party represented without authority takes proper steps in due time, to be relieved—he may be concluded by his laches—or he may adopt the acts of the unauthorized attorney, by paying him for his services. See

above authorities, and *Ryan v. Doyle*, 31 Iowa, 53. (4) In order to be relieved from a judgment rendered on an unauthorized appearance the defendant must establish a meritorious defense. *Crawford v. White*, 17 Iowa, 560; *Gregory v. Ford*, 14 Cal. 138; *Piggott v. Addics*, 3 G. Greene, 427; Freeman on Judgts., sec. 498. (5) When it is made to appear that the appearance of the attorney was unauthorized the court should exercise an equitable control over the judgment, and for that purpose should stay execution and let the defendant in to make his defense. *Denton v. Noyes*, 2 Johns. 296. In the case at bar the defendant did not offer to show, nor did he even claim, that he had any defense. (6) The court properly overruled defendant's motion to set aside the judgment, because the evidence clearly established, and the court found, that the attorneys who appeared for the defendant were fully authorized to do so. (7) Instructions are not properly given on the hearing of a motion, hence there was no error in refusing the instruction asked by defendant. *Erskine v. Loewenstein*, 82 Mo. 301–305. But even if this had been a proper case for instructions, defendant's instruction did not properly declare the law. It wholly omitted the question of a meritorious defense, and was but a mere generalization. The instruction, asked by plaintiff under protest, and given by the court, covered the case and correctly stated the law. (8) It is not a correct deduction to say that, because the court refused an instruction, it decided the case "upon a theory of the law directly opposed to this." *Miles v. Davis*, 19 Mo. 408; *Dempsey v. Reinsedler*, 22 Mo. App. 43; *Kling v. Kansas City*, 27 Mo. App. 231, 250.

BLACK, J.—The plaintiffs obtained a judgment against the three defendants for the possession of five lots and for damages and costs at the September term,

1886, of the Pettis circuit court. The defendants, Welch and Ferguson, were the tenants of the defendant, Julius Blandon. At the same term, the defendants filed their motion to set aside and vacate the judgment, and as grounds therefor they state that they had no notice or knowledge of the suit, and had never been served with summons, and did not enter or authorize any one to enter their appearance. From an order overruling the motion, they sued out this appeal.

The record discloses the following facts: The plaintiffs resided in the state of California, and are called in the record the Price heirs; through their attorney they made claim to eighty acres of land in and adjacent to the town of Smithton. In December, 1881, they filed ten suits in ejectment against persons in possession of different lots. Writs of summons were duly issued in these cases, and they were placed upon the court docket in the usual course of business of the court. At the same time, the attorney for the plaintiffs gave the clerk six or eight petitions against other persons, one of them being a petition against these defendants, and directed the clerk not to issue upon them at that time. The clerk or his deputy placed them in one envelope, and made the following endorsement thereon: "Sarah E. Bradley *et al. v.* Sundry Parties. Filed, December 14, 1881. Not to be issued on until further instructions from plaintiffs' attorneys."

No writs were ever issued on any of these petitions, nor were they ever docketed as cases pending in the court. They remained in this envelope until 1884, when Mr. Jackson, the plaintiff's attorney, got them from the clerk for the purpose of having judgments entered thereon.

When the writs in the ten suits were served many of the citizens of Smithton held a meeting, and a committee was appointed to employ attorneys to defend the cases. The committee employed attorneys who executed the following receipt:

"Price Heirs                    Same
  *v.*                           *v.*
"W. C. Overstreet.             Nine other Suits.

"SEDALIA, Mo., Dec. 24, 1881.

" Received of W. C. Overstreet, H. Deaman, James Cook, Joe Warren, committee for the Smithton people, per hands of Jesse Fowler, one hundred dollars, being fifty dollars' retainer fee for W. W. S. Snoddy and fifty dollars' retainer fee for H. C. Sinnett, in said suits, pending in the circuit court of Pettis county, Missouri. Said one hundred dollars being one-half of the fee for said suits, and the balance to be paid at the termination of said suits; said total fees to be for services in the said supreme court, if carried there. For any ·future suits brought by the Price heirs, a. reasonable fee for services in doing work in drawing answers therein shall be paid to said Snoddy and Sinnett.

"H. C. SINNETT,
"W. W. S. SNODDY."

The defendant Blandon attended the meeting at which the committee was appointed to engage lawyers and took part in it. He as well as many others who were not sued, and others who were not in the disputed district, contributed to the fund raised to pay the attorneys in the ten suits. The proof is clear that he did not, until the present judgment was entered in 1886, know that any petition had been filed against him or his tenants; and the persons composing the committee had no knowledge that any suits had been brought, except the ten in which writs had been issued. Sinnett and Snoddy appeared for the defendants in these ten suits, and stipulated with the attorney for the plaintiffs to try the case against H. L. Cook, and let the other cases abide the result. In this stipulation they profess to act for H. L. Cook and "the defendants in all of the other cases brought by said plaintiffs."

A change of venue was awarded the plaintiffs in the case against H. L. Cook to Lafayette county; but a jury being waived in that court the cause was sent back to the Pettis circuit court for trial with the other cases. In the meantime Sinnett and Snoddy became anxious to take the case against James Cook, it being one of the ten duly docketed for a test trial and desired a continuance. The substitution was made and a continuance agreed to by a stipulation made and filed in the two Cook cases, dated December 1, 1883. Among other things, this stipulation provides that the attorney for the plaintiffs and the attorneys for defendants in the two Cook cases, and "in suits now brought and about to be brought" for the recovery of the eighty acres, agree as follows : "That all who are now defendants, or who shall be made defendants, and who have not already been served with summons, enter their appearance and waive service of summons, and the signing hereof shall be the evidence thereof without more. And it is further stipulated and agreed that each of said persons claiming the several parts of said land, whether already sued or not, admit the possession of the part for which they have been or are to be sued," etc. The Missouri Pacific Railway Company is excepted.

A trial of the James Cook case in 1884 resulted in a judgment for plaintiffs, and thereupon the attorney for the plaintiffs presented to the court the stipulation before set forth, and the court ordered the clerk to enter a judgment against the defendants in this case. These judgments were set aside and a new trial awarded in the Cook case. The second trial of that case occurred in September, 1886, and the plaintiffs again recovered, and thereupon the court, on motion of plaintiffs' attorney, ordered the judgment to be entered in this case, which the defendants seek to set aside.

Mr. Sinnett testified in substance that he had nothing to do with the Smithton suits, except those which

appeared upon the court docket; that he had no knowledge of the other alleged suits until September, 1886; and that he did not know that a judgment had been entered in this case in 1884 at the time of the first trial of the Cook case. Says he told Mr. Jackson, when he signed the stipulation of December 1, 1883, that he did not have the authority, that he and Snoddy only represented the cases then on the court docket. On the other hand, Mr. Jackson testified that he called Mr. Sinnett's attention to these cases in which the parties had not been served about the time a change of venue was awarded in the Cook case; that it was always understood Sinnett and Snoddy would enter the appearance of the defendants in the cases not appearing upon the court docket; but the matter was neglected until they signed the stipulation.

1. There is but one thing upon which plaintiffs can rely to give the court jurisdiction of these defendants, and that is the stipulation of the attorneys, Sinnett and Snoddy, of December 1, 1883, and filed in the two Cook cases. That stipulation, in so far as it relates to "suits brought," can have no application to this case. This suit was not brought when the stipulation was signed. The petition, with a number of others, was simply lodged with the clerk with directions not to issue upon it, and for a period of two years had not been docketed as a cause pending in the court. In fact it never was docketed as a pending cause. In no fair sense of the expression can it be said the suit was one then brought. The circumstances tend strongly to show that these petitions were unknown to Sinnett and Snoddy when they signed the agreement. But the stipulation is far-reaching, for it professes to waive service and enter the appearance of all defendants not then served "in suits now brought and about to be brought" for the recovery of parts of the eighty acres. It is certainly a most remarkable agreement, either to be made or

accepted by attorneys. The usual practice is, when attorneys attempt to enter the appearance of a defendant, to have the cause docketed, and to make a formal order upon the record in the particular case. If plaintiffs will rely upon such a wholesale waiver of service upon unnamed defendants they must see to it that the attorneys making the stipulation have the authority. In accepting such a waiver they do so at their peril, where the proceeding to vacate the judgment is a direct one as it is here.

2. The evidence shows beyond question that when the persons constituting the committee employed Sinnett and Snoddy to defend the ten cases they did not know that any other suits had been filed. They did not profess to have authority to make a contract for any person that might be thereafter sued. One of them says in positive terms that they had no such authority. The fact that the defendant Blandon attended the meeting at which the committee was appointed and contributed to the fund raised to defend these ten suits, and that is all he did do, would not make the attorneys engaged in those suits his attorneys for any suit that might thereafter be brought against him. The members of this committee had reason to believe that suits against other persons would be instituted, and hence there seems to have been a general understanding between them and the attorneys that the latter would defend any other suits that might be brought for a reasonable fee; this much is indicated in their receipt. But no persons were named or designated, and the arrangement was necessarily a general and indefinite one, subject to the acceptance of those who might thereafter avail themselves of it.

It has been held that an attorney at law has no authority, by virtue of his general retainer, to waive service for his client of original process, by which the court acquires jurisdiction for the first time of the person

of the client. Wait's Act & Def. 439; *Masterson v. LeClaire,* 4 Minn. 163; *Starr v. Hall,* 87 N. C. 383. The principle upon which the rule is founded is that it is not within the scope of the duty of an attorney to admit service of original process; that the exercise of such a power is rather the act of an agent or attorney in fact than that of an attorney of the court, and he should have special authority for it. Weeks, after speaking of the former method of appointing attorneys, says: "And now, although an attorney cannot, without special authority, admit service of jurisdictional process upon his client, yet it has been presumed in collateral proceedings, and on appeal or error, that a regular attorney at law, who appeared for a defendant, though not served, had authority to do so." Weeks on Attorneys, p. 338. But from the evidence in this case we must say that Sinnett and Snoddy were not the attorneys of these defendants, for the defendants never availed themselves of the general and indefinite arrangement made by the committee. It required some further act on their part to bring about the relation of attorney and client.

3. It is now the settled law of this state that in a suit upon a foreign judgment the defendant may plead and show as a defense that in the original suit no service was had upon him, and that his appearance entered by an attorney was unauthorized. He will not be required to go to the state where the judgment was rendered and by some proceeding have it set aside. *Marx v. Fore,* 51 Mo. 69; *Eager v. Stover,* 59 Mo. 87; *Barlow v. Steel,* 65 Mo. 619; *Napton v. Leaton,* 71 Mo. 367. This is a direct proceeding to set aside the judgment entered upon the unauthorized appearance by an attorney; and whatever may have been the state of the law at one time it is now generally held that a domestic judgment, entered without the service of summons on the defendant and on the unauthorized appearance of an attorney, may be set aside on motion timely made in the court which

rendered the judgment. The relief will be granted without regard to the question whether the attorney is responsible or not. Freeman on Judgments, sec. 499; *Harshey v. Blackmarr*, 20 Iowa, 161; *Critchfield v. Porter*, 3 Ohio, 519; notes to *Bunton v. Lyford*, 75 Am. Dec. 146; *Bayley v. Buckland*, 1 Exch. (1 W. H. & G.) 1.

In thus stating what we believe to be the correct rule, we do not include those cases where the judgment defendant has in some way ratified the unauthorized act of the attorney. No ratification appears in this case. On the contrary it appears the defendants knew nothing about this suit until Blandon saw a notice of the judgment in the newspapers. It results from what has been said that the motion should have been sustained, and the judgment is reversed and the cause remanded with directions to the trial court to sustain the motion. All concur.