CROSS et al., Respondents, v. GOULD et al., Appellants.

St. Louis Court of Appeals, May 12, 1908.

1. APPELLATE PRACTICE: Error Not Prejudicial.    The appellate court will not reverse a case on account of error committed by the trial court unless such error materially affected the merits of the case.

2. JUDGMENTS: Motion to Set Aside at Subsequent Term: Irregularity.    A motion to set aside a judgment, for irregularity appearing upon the face of the record, had to be filed, under the common law rule, during the term at which the judgment was rendered, but the time has been extended by our statute which authorizes such actions at any time within three years after the term at which the judgment was rendered.

3. ——: ——: ——. The irregularity for which a judgment may be set aside by motion filed at a subsequent term must be a want of adherence to some prescribed rule or mode of procedure; it does not matter how erroneous a proceeding may be, a judgment to which it leads will not be set aside by such motion unless it is irregular in prescribed methods of procedure and such irregularity appears on the face of the record.

4. ——: ——: Writ of Error Coram Nobis at Common Law. A writ of error *coram nobis* at common law was issued by the court to correct errors of fact as distinguished from errors of law, such as where the court had proceeded in a case as though a fact, which was material to its right to proceed, existed, when it did not exist; where, for instance, the court had rendered judgment against an insane person or a minor, without the intervention of a guardian, or against a person who had died before the judgment, etc., the remedy for the irregularity was by writ of error *coram nobis*; such a writ could not be invoked to set aside a judgment procured by fraud.

5. ——: ——: Motion in the Nature of Writ of Error Coram Nobis: Fraud in Procuring Judgment. Under the prevailing practice in this country, a judgment may be set aside at a term subsequent to its rendition on motion in the nature of a writ of error *coram nobis*, for reasons other than those which justified the writ at common law, such as fraud practiced in the act of procuring the judgment.

6. ——: ——: ——: ——. Where, in a case pending, the attorney for the defendant who resided in another State was prevented from attending the trial by the attorney for the plaintiff who wrote to him, telling him that he would be notified when the case would be tried and nothing would be done until he should be notified, and where the plaintiff's counsel then stated to the court that the defendants did not further appear to the action for the reason they recognized the justice of the plaintiff's claim, and did not intend to contest it, and were willing to have judgment rendered against them, whereupon the court rendered judgment by default, this was sufficient ground for setting aside the judgment for fraud in the act of procuring it.

7. ——: ——: ——: ——: Negligence. Where the defendants' attorney, in such case, was notified by the plaintiffs' attorney that he would be informed of the time when the case should be set and that nothing would be done without notice to him, he was not negligent in failing to attend court at which the judgment was rendered without his knowledge, so as to preclude his right to have the judgment set aside for fraud, on motion in the nature of a writ of error *coram nobis*.

8. ——: ——: ——: ——: Waiver. Where a judgment was procured by fraud and the attorney for the defendant

against whom it was rendered appeared and moved to have the judgment corrected by *nunc pro tunc* entry, the plaintiff did not thereby waive his right to have the judgment vacated for fraud in procuring it, when neither he nor his attorney knew at the time of moving for such *nunc pro tunc* entry that fraud had been practiced.

9. ——: ——: ——: ——: Estoppel. The defendant in such case was not estopped to proceed by motion in the nature of a writ of error *coram nobis* to have the judgment set aside on the ground that his attorney had moved the court to correct the judgment by *nunc pro tunc* entry, and prepared the judgment for that purpose; defendant had a right to have an entry of the judgment *nunc pro tunc* in order to make the record speak the truth to show what was actually decided; and moving for that purpose could not estop him to have the judgment set aside after it did speak the truth.

Appeal from Shelby Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

REVERSED AND REMANDED (*with directions*).

*George B. Gould* for appellants.

(1) It is the duty of a court to correct its record at any time it discovers the defects, and may do so at the instance of any person interested, or of its own motion. Van Fleet, Coll. Attack, ch. 20, part 11; Estate of Cook, 77 Cal. 220; 11 Am. St. 267. As to such facts, there is or can be no issue. When a court, in rendering a judgment, goes outside of and beyond the case made, and assumes to pass upon matters not in issue, and makes findings not only upon matters concerning which no issue was tendered, but which are also contrary to and inconsistent with express allegations in the plaintiffs' petition, such judgment is not only erroneous, but irregular and void, and subject to collateral attack. Hume v. Robinson, 23 Colo. 361; Munday v. Vail, 34 N. J. L. 418; Smith v. Transfer Co., 92 Mo. App. 41; Paddock v. Lance, 94 Mo. 283; White v. Rush, 58 Mo. 105; Janey v. Spedden, 38 Mo. 395; Boogher v. Frazer,

99 Mo. 325; Reynolds v. Stockton, 940 U. S. 254. (2) If an attempt was made to get relief based or grounded upon this decree, fraud in its procurement, when shown, would be a complete defense.    Marx v. Fore, 51 Mo. 69; Word v. Quinlevin, 57 Mo. 425; Wonderly v. Lafayette Co., 150 Mo. 635.    (3) Motion at a subsequent term is proper procedure and now commonly used to take the place of writs of error *coram nobis* and *audita querela,* to vacate on account of some matter of fact not appearing on the record, and this, too, even though the judgment is apparently regular, and it is sought to set aside the judgment or decree for something which can only be shown by matters outside the record, time not limited except for irregularity.    Fisher v. Fisher, 114 Mo. App. 628; James and Ray Ex parte, 59 Mo. 280; Latshaw v. McNess, 50 Mo. 381; State ex rel. v. Heinrich, Ch. 14 Mo. App. 146; Powell v. Gott, 13 Mo. 458; In re Toney, ex parte, 11 Mo. 661; Ex parte Page, 49 Mo. 294.    Court had not the authority, and its judgment was not only irregular, but void.    Dubois v. Clark, 12 Colo. App. 228; Ex parte Gray, 77 Mo. 160; Dowing v. Still, 43 Mo. 309; Pockman v. Meatt, 49 Mo. 345. One is not estopped when there has been fraud.    Hirsh v. Weisberger, 44 Mo. App. 506; Strum v. School District, 45 Minn. 88.    As between the parties it is different than when the rights of third persons are involved. Gott v. Powell, 41 Mo. 416.    (4) Motions lie in law courts and law cases, as well as in equity and equity cases. Formerly by writs of error, *coram nobis* and *audita querela,* but now by motion and fraud, is one of the grounds for which it lies.    Stanfford v. Barry, 1 Atkins, 321, 15 Am. Dec. 692, and note; Allen v. Maclellan, 12 Pa. St. 328; 51 Am. Dec. 608; Dial v. Farrow, 1 McMull 292, 36 Am. Dec. 267; Benson v. Vernon, 3 Bro. Parl. 629; Dugan v. Scott, 37 Mo. App. 663; Neenan v. Scott of St. Joseph, 126 Mo. 89; Ex parte Gray, 77 Mo. 161; Stickney v. Davis, 17 Pick. 169; Note to

Collins v. State, 97 Am. St. 370; 1 Black on Judgments, ch. 14, secs. 299, 300; Vandenburg v. Mayor, etc., of New York City, 57 N. Y. 285; Richardson v. Richardson, 67 N. J. Eq. 437; State v. Calhoun, 50 Kan. 623; Sanders v. State, 85 Ind. 318, 44 Am. Rep. 29; Larson v. Williams, 100 Iowa 110, 62 Am. St. 544; Whereat v. Ellis, 70 Wis. 207, 5 Am. St. 164; Morrill v. Morrill, 20 Ore. 96, 23 Am. St. 95, and note and cases cited; Hinkling v. Allen, 15 Fed. 196; Strom v. School Dist., 45 Minn. 88.

*V. L. Drain* and *Dysart & Mitchell* for respondents.

If the judgment is attacked and sought to be set aside for matters *aliunde* or *dehors* the record, such as fraud, mistake or imposition, it can only be assailed, vacated and set aside by a bill in equity. Heffernan v. Ragsdale, 199 Mo. 376; Davis v. Robinson, 102 S. W. 1048; Phillips v. Evans, 64 Mo. 23.

NORTONI, J.—In this proceeding, the immediate relief sought is to set aside a judgment on motion filed at a subsequent term. Although defendants appeared to the action, they failed to appear at the term at which the judgment was given against them. They also failed to file motions for new trial or in arrest. They did appear, however, at a subsequent term of the court and filed a motion to set aside and vacate the judgment mentioned. This motion was stricken from the files by the court on motion of plaintiff and the court having declined to reconsider its action, on appropriate motion for review, defendants appealed from the adverse ruling by which the motion to vacate the judgment was stricken from the files. There are several questions which essentially arise on the record and they are somewhat involved. To the end therefore, that a complete understanding of their relationship may be had, a comprehensive statement of the proceedings will be given.

On April 30, 1903, plaintiffs filed their bill in the

circuit court, stating substantially, among other things, that defendants owned a certain farm in Shelby county and had theretofore borrowed from the State Savings Loan and Trust Company of Quincy, Illinois, two thousand dollars, for which they executed their note, together with a deed of trust on said farm, to secure the payment thereof, which deed of trust was a valid and existing lien thereon; that one Nailen afterwards claimed to have purchased such lands from defendants and exhibited a deed in proper form purporting to have been executed by defendants conveying said lands to him; that plaintiffs, desiring to purchase said lands, caused the records of said county to be examined and procured an abstract of title thereto, and it appearing therefrom that said Nailen was the owner thereof, subject to said deed of trust, they purchased the same from said Nailen and paid the full purchase price of $7,200 in cash to him therefor, except plaintiffs retained the sum of $2,100, being the amount of defendants' said note and the then accrued interest thereon, secured by said deed of trust outstanding against said lands; that plaintiffs, not as volunteers, however, but believing in good faith that they had acquired title to said lands from the lawful owner thereof, caused the said note of said defendants, secured by said deed of trust, to be paid off and the said deed of trust to be cancelled on the records of said county, and also paid off and discharged $20 taxes then accrued and existing as a lien on said lands; that afterwards the defendants claimed to own such lands and denounced the deed held and exhibited by said Nailen purporting to be executed by them to said Nailen, as a forgery, wherefore it appeared that plaintiffs, while acting in the utmost good faith, had received no title to said lands and were about to be defeated of the amount of incumbrances represented by the deed of trust and taxes on said land theretofore paid off by them as stated. The bill prayed substan-

tially that plaintiffs be subrogated to the rights of those holding the original liens securing such note, etc.; that if plaintiffs had no title to the lands, they be decreed the owners of the defendants' note and the taxbill paid under the circumstances stated, and prayed the court that after so declaring, the lien of the said incumbrances mentioned be revived and re-established, and to declare the plaintiffs of right ought to be and are subrogated to all of the rights of the said original lienors, etc., and the amount of said incumbrances being then due, the plaintiffs be given judgment against the defendants therefor, etc. During the April term, on April 4, 1904, nearly one year after the filing of the suit, the record discloses the defendants appeared and filed a motion striking at the sufficiency of the bill. The court considered this motion as a general demurrer, and so adjudged, it was overruled when the cause came on for trial.

It next appears from the record that on May 30, 1904, at the April adjourned term of the court, the cause came on to be heard; that the plaintiff appeared and announced ready for trial; that defendants were duly called and appeared not, "but made default, after having by demurrer appeared to the action;" that the demurrer was seen, considered and overruled by the court and the cause submitted to the court upon the pleadings and the evidence. It appears from this decree that the court found all the facts as stated in plaintiffs' bill and decreed to the plaintiffs all of the relief prayed for therein. Neither a motion for new trial nor in arrest of judgment was filed. The court adjourned for the term, and it next appears that at the April term, 1905, defendants appeared by counsel and moved the court to make certain corrections in the judgment *nunc pro tunc*. This motion was considered by the court, and at the October term, 1905, sustained and the judgment corrected *nunc pro tunc* as prayed for by defendants' counsel. In

this connection, the record also shows that defendants' counsel prepared and presented to the court a copy of the decree which defendants considered a proper form of entry *nunc pro tunc,* and that the court, at his instance and request, adopted the same and ordered it spread upon the record as the decree of the court, which was done.    The decree, as amended *nunc pro tunc,* awarded to the plaintiffs the same relief as that given by the original decree.    It included some other matters, however, favorable to the defendants, such as finding and declaring that the deed from Nailen to plaintiffs was a forgery, and that, as between the present plaintiffs and defendants, the title to the lands remained in defendants.    In the main, the decree is about the same as that originally entered.

It appears, next, that one year afterwards, at the October Term, 1906, the defendants filed a motion to vacate and set aside the judgment.    This motion is an extended document.    In it sixty-one reasons are urged upon the court for vacating the judgment rendered May 30, 1904, as corrected *nunc pro tunc,* October 2, 1905.

As stated, there are sixty-one separate specifications contained in this motion as grounds for vacating the judgment.    Of course it is out of the question to incumber the opinion by restating them here.    After a careful consideration, we are persuaded the pertinent propositions arising on this motion for consideration may be summarized to be three in number, as follows:

First.    The judgment should be set aside for irregularity in proceedings.

Second.    The judgment should be set aside for fraud practiced by plaintiffs' counsel in misleading defendants' counsel as to the time the court was convened and failing to inform him of the date for which the cause was set and for fraud practiced in the act of procuring the judgment.    .

Third.    The judgment should be set aside for innu-

merable matters of fact which were essentially adjudi-
cated by the court in pronouncing the judgment; for
instance, such as because it is not true that plaintiffs
owned the note mentioned; it is not true that they had
paid it off and caused the deed of trust to be cancelled
of record; and it is not true that one Nailen procured
and caused to be recorded a deed purporting to convey
the lands from defendants to said Nailen, as found by
the court.    Several affidavits were filed in support of
these grounds.

Upon plaintiffs moving to that effect, the motion
to set aside and vacate the judgment above mentioned
was stricken from the files and the court having de-
clined to reconsider its action in that behalf, defendants
prosecuted this appeal.

Now if it be true that error was committed in strik-
ing defendants' motion to vacate the judgment from the
files, and no doubt it was, it is nevertheless the duty
of the court, under the statute, to affirm the judgment,
unless it appears that such error is one materially af-
fecting the merits of the controversy.    [Sec. 865, R. S.
1899; sec. 865, Mo. Ann. St. 1906.]    That is to say,
if it appears from an examination of the record that a
proper result was reached by the trial court, its judg-
ment should not be disturbed by a court of review at
the expense of substantial justice. for the mere reason
that technical error intervened in the course of its pro-
ceeding to attain an end eminently proper in itself. This
is the purpose of the code provisions, as we understand
it.    It rests upon a broad and sound fundamental prin-
ciple of natural justice and should be adhered to and
effectuated in the spirit so obviously contemplated by
its author.    In the view we entertain of the case, it
is important, therefore, to examine and determine the
several questions arising on the motion to vacate, which
was stricken from the files.    It is insisted by learned

131 App.—38

counsel for plaintiffs that the motion to vacate at a subsequent term was properly stricken for the reason such motion avails nothing more than to invite the attention of the court to such irregularities as appear upon the face of the record, and there are no such irregularities manifest in this proceeding.    This argument must be regarded as unsound, for the reason it entirely ignores the remedy by writ of error *coram nobis* which nowadays is pursued in a summary manner by motion, and it ignores as well the remedy by motion to vacate the judgment for fraud practiced in the very act of its procurement, both of which, in addition to the remedy by motion for irregularity, obtain in the jurisprudence of this State, as is evinced by a very large number of adjudicated cases which will presently be more particularly adverted to in the opinion.    The three remedies for vacating the judgment at a subsequent term and the scope of the relief which may be properly administered by each, as ascertained and settled in the law of Missouri, will be noticed separately.

It may not be out of place to say here that many of the cases in this State are ambiguous and somewhat confuse the remedies mentioned.    This results from loose expression occasioned no doubt by learned judges giving opinions in some instances without first consulting the authorities.    There are other of our cases, however, which are elucidating indeed, and clearly mark the line of distinction so essential to a complete understanding of the important doctrines involved.    In view of the argument advanced by counsel for plaintiffs, we will advert, first, to the remedy by motion to vacate for irregularity.

*The Motion For Irregularity.*    Now it is not true, as some cases say, that this is a statutory remedy which finds its origin in section 795, Revised Statutes 1899 (sec. 795, Mo. Ann. St. 1906), but on the contrary, it was and is now a well-known remedy at common law,

by which system of jurisprudence it should usually, but
not always, be filed at the term at which the judgment
sought to be vacated, was rendered. [See Tidd's Prac-
tice (4 Am. Ed.), sec. 512-515.] By section 4151, Re-
vised Statutes 1899 (sec. 4151, Mo. Ann. St. 1906), the
common law of England, prior to the fourth year of
the reign of James I, was adopted in this respect, at
least in this State, as the rule of decision, unless chang-
ed or modified by constitution or statute. Our statute
on the subject does no more than recognize this as a
pre-existing common law remedy and by implication,
authorizes its continuance, limiting its application, how-
ever, to cases where the motion is filed "within three
years after the term at which such judgment was ren-
dered." Besides the plain language of the statute of
limitations mentioned, see Heffernan v. Ragsdale, 199
Mo. 375 and also Downing v. Still, 43 Mo. 309.

And so it is, a motion to set aside a judgment for
irregularity, that contemplated by the statute supra,
is available as a remedy only in those cases where there
is some irregularity appearing in the judgment itself or
on the face of the proceeding antecedent thereto. And
while this irregularity need not be one which would ren-
der the judgment absolutely void, and therefore subject
to be defeated on collateral attack, it must be one which
indicates at least that the judgment was given contrary,
in some material respect, to the established form and
mode of procedure for the orderly administration of
justice. An irregularity in the sense of the law may
be said to be a want of adherence to some prescribed
rule or mode of procedure, consisting either in omitting
to do something that is necessary for the due and or-
derly conduct of the suit, or in doing it at an unseason-
able time or in an improper manner. [Tidd's Prac-
tice (4 Am. Ed.), 512; Downing v. Still, 43 Mo. 309;
Clowser v. Noland, 72 Mo. App. 217, 219; Reed Bros. v.
Nicholson, 93 Mo. App. 29, 35.] Illustrative of such

irregularities as will authorize the vacation of a judgment, an instance appearing frequently in the books is where the judgment had been given for plaintiff by default for a failure to plead, at a day of the term before plaintiff was entitled to it.    [Branstetter v. Rives, 34 Mo. 316; see also Reed Bros. v. Nicholson, 93 Mo. App. 29; Smith v. Best, 42 Mo. 185.]    And so, too, where both final and interlocutory judgment by default, taken at the same term in a suit not founded upon a bond, bill or note for the direct payment of money, were determined to be irregularities which authorize the court to set aside the judgment at a subsequent term. [Lawther v. Agee, 34 Mo. 372.]    A judgment entered on the merits by default while a demurrer or answer was on file and not disposed of, has been determined to be an irregularity for which the judgment should be set aside at a subsequent term.    [Norman v. Hooker, 35 Mo. 366; Follett v. Alexander, 58 Ohio St. 202; Oliphant v. Whitney, 34 Cal. 25.    See also 1 Black on Judgments (2 Ed.), 326.]    Rendering a judgment for an amount in excess of the penal provisions of a bond in suit, is an irregularity for which the judgment may be set aside on motion at a subsequent term.    [Showles v. Freeman, 81 Mo. 540.]    A cause was referred and the referee failed to report for a considerable time after the report was due.    During the interim, appellee induced the court to affirm the judgment of the justice for the reason the appeal was not prosecuted.    At a subsequent term, the court set this judgment of affirmance aside as for irregularity and this action was affirmed by the Supreme Court.    [Stacker v. Cooper Circuit Court, 25 Mo. 401.]    It will be noted in all of these cases the irregularity appeared on the face of the proceeding and was discoverable without evidence *aliunde* or *dehors* the record.    For numerous other authorities dealing with such motions to the same effect, see Brewer v. Dinwiddie, 25 Mo. 351; Doan v. Holly,

27 Mo. 256; Phillips v. Evans, 64 Mo. 17; Harkness v. Austin, 36 Mo. 47; Burgess v. Hitt, 21 Mo. App. 313; State ex rel. Ozark County v. Tate, 109 Mo. 265, 18 S. W. 1088; State ex rel. Waters v. Hunter, 98 Mo. 386, 11 S. W. 756; Rankin v. Lawton, 17 Mo. App. 574; Halsey v. Meinrath, 54 Mo. App. 335; Hirsh v. Weisenberger, 44 Mo. App. 506; Siewerd v. Farnem, 71 Md. 627. On the other hand, it has been determined in numerous cases of which Harbor v. Pacific Railway Co., 32 Mo. 423, indicates the class, that however erroneous a proceeding may be, if it be regular, after the manner of the prescribed methods and modes of procedure, the judgment will not be set aside at a subsequent term on motion as for irregularities.   See also in this connection, Phillips v. Evans, 64 Mo. 17 and Heffernan v. Ragsdale, 199 Mo. 375, 97 S. W. 890, where it is pointed out the irregularity must appear on the face of the proceeding and that it is not permissible to investigate from evidence *aliunde* or *dehors* the record in such cases.

*The Writ Coram Nobis At Common Law.*   It is insisted the proceeding is a writ of error *coram nobis.* Now if it be such, it is certain the defendants were entitled to a hearing thereon and the court erred in striking it from the files without first affording them an opportunity to produce competent evidence tending to sustain its allegations.   It is therefore important to examine the document with reference to the law pertaining to such writs.   It has been said the code is not sufficiently comprehensive to meet and deal with every varied phase which a case may assume in its vicissitudes through the courts and therefore resort must frequently be made to the ancient common law procedure. [Tucker v. Insurance Co., 63 Mo. 588; Neenan v. St. Joseph, 126 Mo. 89, 94, 28 S. W. 963.]   A writ of error *coram nobis* is parcel of that procedure which came to us with the common law.   It issues out of and for the purpose of review by the same court in which the record lies and

predicates upon errors of fact as contradistinguished from errors of law. Besides for error in process through the default of the clerk [Bronson v. Schulten, 104 U. S. 410; Tidd's Practice (4 Am. Ed.), sec. 1137], the writ would lie at common law when the court had proceeded in a case as though a fact which was material to its right to proceed, existed, when it did not exist, and when the absence of the fact assumed to exist, entirely defeated the power of the court to attain a valid result in its proceeding.    [Marble v. Vanhorn, 53 Mo. App. 361, 365; Bronson v. Schulten, 104 U. S. 410; Dugan v. Scott, 37 Mo. App. 663; Neenan v. St. Joseph, 126 Mo. 89, 28 S. W. 963; Heard v. Sack, 81 Mo. 610, 616; Adler v. State, 35 Ark. 517, 530; Craig v. Smith, 65 Mo. 536; Ex parte Toney, 11 Mo. 661; Calloway v. Nifung, 1 Mo. 159; State ex rel. Hudson v. Heinrich, 14 Mo. App. 146; Ex parte Gray, 77 Mo. 160; Ex parte Page, 49 Mo. 291; Powell v. Gott, 13 Mo. 459; Latshaw v. McNees, 50 Mo. 381; Walker v. Deaver, 79 Mo. 664, 674; Hirsh v. Weisberger, 44 Mo. App. 506; LeBourgeois v. McNamara, 10 Mo. App. 116; s. c. 82 Mo. 189; Davis v. Robinson, 126 Mo. App. 293, 102 S. W. 1048; Tidd's Practice (4 Am. Ed.), sec. 1137; 5 Ency. Pl. & Pr., 27; for a learned note, see 18 L. R. A. 838.]

It may be taken as a proposition settled entirely beyond controversy in the law of this country and England that the writ of error *coram nobis* does not go to errors arising on facts submitted to a jury, referee, or to the court sitting as a jury to try the issues of fact. [Bronson v. Schulten, 104 U. S. 410, 416; 5 Ency. Pl. & Pr., 736.]    Nor will this writ lie for the purpose of correcting errors of law.    [Maple v. Havenhill, 37 Ill. App. 311; Hawkins v. Bowie, 9 Gill. & J. (Md.) 428; Fellows v. Griffin, 9 Smed. & M. (Miss.) 362; Patterson v. Arnold, 4 Coldw. (Tenn.) 364; Upton v. Philips, 11 Heisk. (Tenn.) 215; 5 Ency. Pl. & Pr. 29; Tidd's Practice (4 Am. Ed.), sec. 1137.]

Instances where judgments have been set aside on writ of error *coram nobis* at a subsequent term of the court for such errors of fact as above indicated and illustrating the proper scope of the remedy at common law, are as follows:

In cases where judgment had been given against an insane person, without the intervention of a guardian, as though sane, it was held to be such an error of fact not appearing on the record as essentially invalidated the proceeding, and the judgment was therefore set aside on writ of error *coram nobis*. [Heard v. Sack, 81 Mo. 610, 616; Adler v. State, 35 Ark. 517, 530.]

When a defendant dies after service upon him and before judgment, writ of error *coram nobis* is a proper remedy to set aside and vacate the judgment for the reason it is an error of fact not appearing on the record of the court which renders the judgment invalid. [Calloway v. Nifung, 1 Mo. 223; see also Dugan v. Scott, 37 Mo. App. 663.]

Where a married woman defendant was sued without her husband being joined and judgment obtained against her, it was adjudged proper to set the judgment aside at a subsequent term on writ of error *coram nobis*, the husband and wife both appearing for that purpose, for the reason it was an error of fact permeating the judgment and which did not appear on the record. [Latshaw v. McNees, 50 Mo. 381; Walker v. Deaver, 79 Mo. 664, 674.]

Where it appeared affirmatively by the sheriff's return one defendant was not served and through error, counsel representing the other defendants answered as though they represented the one unserved with the others; it was held that a writ of error *coram nobis* filed at a subsequent term was a proper remedy to set the judgment aside. [Craig v. Smith, 65 Mo. 536; Vilas v. Butler, 9 L. R. A. 844; 123 N. Y. 440; Warren v. Lusk, 16 Mo. 102, 114.]

And so too where the court found from a false return the defendant was a non-resident, and therefore ordered service by publication against him. [State ex rel. Hudson v. Heinrich, 14 Mo. App. 146; see also State ex rel. v. Horine, 63 Mo. App. 1.]

Where a slave pleaded guilty to grand larceny as a free man and was sentenced to the penitentiary, which sentence was incompetent by reason of the fact of slavery, it was held the court should set the judgment aside on writ of error *coram nobis* at a subsequent term. [Ex Parte Toney, 11 Mo. 661.]

And so, too, where an infant, upon a plea of guilty, was sentenced to the penitentiary, which was an incompetent judgment on account of the fact of his infancy, the court, at a subsequent term, set the judgment aside on writ of error *coram nobis* and committed him to jail. [Ex Parte Page, 49 Mo. 291; Ex Parte Gray, 77 Mo. 160.]

Where a judgment was rendered against an infant without a guardian *ad litem* as though he were *sui juris,* which judgment was incompetent because of the fact of infancy, it was adjudged proper to set the same aside at a subsequent term on writ of error *coram nobis.* [Neenan v. St. Joseph, 126 Mo. 89.]

The above instances illustrate the doctrine. Its application was entirely appropriate in every case cited. It will be noted in each case the judgment given was incompetent for some error of fact when the fact about which the error was committed was one essential to the validity of the proceeding and had been treated by the court as existing when in truth it did not. Now in the proceeding under review, no such error of fact as those above indicated, is relied upon to vacate the judgment. It therefore appears the proceeding is not by writ of error *coram nobis* at common law.

*The Motion Now Employed as a Substitute for Writ of Error Coram Nobis.*—However it may be with

respect to the limitations of the common law upon the remedy afforded by writ of error *coram nobis,* it must be conceded that under the practice which now generally obtains in the American courts, judgments are frequently set aside and vacated at terms of the court subsequent to their rendition upon motion not only for reasons which would be valid on writ of error *coram nobis* but for reasons entirely foreign to that remedy as it existed at common law, and chief among these reasons, is for fraud practiced in procuring the judgment. It seems the exigencies of hard cases have brought forth these motions, predicated, at least, upon the notion involved in the writ of error *coram nobis,* although the scope of the remedy administered thereon reaches far beyond the writ which they are said to supplant. Indeed, the principles of equity jurisprudence are frequently administered in a summary manner on such motions to the end that needless litigation shall be prevented and complete justice had. It is said the practice of summarily administering equitable relief on motions of this character is certainly justified in those States, such as Missouri, where, by the system adopted, the kinds of procedure which obtained separately at common law and in equity are amalgamated in one form of action and the different character of relief administered by the same tribunal. At any rate, the practice of setting judgments aside at a subsequent term on motion in the nature of a writ of error *coram nobis* for fraud practiced in the act of procuring the judgment, obtains generally in the courts of this country and of this State, as will more fully appear by consulting the following authorities: Downing v. Still, 43 Mo. 309, 319; Spalding v. Meier, 40 Mo. 176; Fisher v. Fisher, 114 Mo. App. 627, 90 S. W. 413; Estes v. Nell, 163 Mo. 387, 63 S. W. 724; Beach v. Beach, 6 Dakota 371; Bronson v. Schulten, 104 U. S. 410; 15 Ency. Pl. and Pr., 259, 269; 5 Ency. Pl. and Pr. 27, 33, 34; 1 Black, Judg-

ments (2 Ed.), secs. 303, 321, 322; Tucker v. James, 12 Heisk. (Tenn.) 333; Delaney v. Brownell, 4 Johns. 136; Denton v. Noyes, 6 Johns. 295; Crouch v. Mullinix (Tenn.), 1 Heisk. 478.

Indeed, it is a common practice and the courts throughout the country quite generally proceed to set judgments aside at the term at which they are given (Bradley v. Welsh, 100 Mo. 258) or at a subsequent term on motion for other reasons as well. A ground of quite frequent action by the courts on such motions is that the judgment has been given against a party because of the unauthorized appearance of an attorney claiming to represent him. [Vilas v. Butler, 9 L. R. A. and instructive note; Craig v. Smith, 65 Mo. 844; Warren v. Lusk, 16 Mo. 102, 114; Critchfield v. Porter, 3 Ohio 518; McKee v. Bank, 7 Ohio 175; Bradley v. Welsh, 100 Mo. 258, 12 S. W. 911; 15 Ency. Pl. and Pr. 239; 17 Amer. & Eng. Ency. Law (2 Ed.), 836; 1 Black on Judgments (2 Ed.), secs. 303, 325.] And under the statute in many jurisdictions, the authorities fully disclose and affirm that the remedy which was originally limited within the scope of the writ of error *coram nobis* is now so extended by the invocation of equitable doctrines on the modern motion as to include, besides that of fraud, the grounds of surprise, accident and mistake, without fault on the part of the movent, as legitimate and proper reasons for vacating a judgment at a subsequent term. [1 Black on Judgments (3 Ed.), secs. 335, 336, 337; 15 Ency. Pl. & Pr., 235, 245, 246; Estes v. Nell, 163 Mo. 387, 394.] We are not concerned, however, with the statutes in other jurisdictions, and with these observations, will dismiss the matter in so far as the grounds of surprise, accident and mistake are concerned, as to which we give no opinion.

As to fraud, it is entirely immaterial whether the statute authorizes the proceeding by motion, or not. Unless it is forbidden, the remedy obtains on the the-

ory that there is an inherent power in the courts of common law to vacate judgments for fraud.    Fraud which will justify a court in setting aside its judgment, however, must be fraud practiced in the act of procuring the judgment, as contradistinguished from fraud which permeates the case prior to its neutralization by the court giving judgment upon it.    The authorities in this State and elsewhere are numerous.    [Mayberry v. McClurg, 51 Mo. 256; Fears v. Riley, 148 Mo. 49, 49 S. W. 846; Payne v. O'Shea, 84 Mo. 129; Hamilton v. McLean, 139 Mo. 678, 41 S. W. 224; Murphy v. De France, 101 Mo. 151, 13 S W. 756; Murphy v. DeFrance, 105 Mo. 53, 15 S. W. 949, 16 S. W. 861; Lewis v. Williams, Admr., 54 Mo. 200; Ward v. Quinlivin, 57 Mo. 425; Oxley Stave Co. v. Butler County, 121 Mo. 614; Jones v. Brinker, 20 Mo. 87; Moody v. Peyton, 135 Mo. 482, 36 S. W. 621; Nichols v. Stevens, 123 Mo. 96, 25 S. W. 578, 27 S. W. 613; Bates v. Hamilton, 144 Mo. 1, 45 S. W. 641; McIntosh v. Crawford Co., 13 Kas. 171; Lee v. Harmon, 84 Mo. App. 157; Miles v. Jones, 28 Mo. 87; 1 Black on Judgments (2 Ed.), 34; 17 Amer. & Eng. Ency. Law (2 Ed.), 827, 828.]

With these principles before us, we will now examine the pertinent features of the motion and affidavits on file in support of it.    It is set out herein that on the first day of April, 1904, immediately before the convening of the court in Shelby county, which occurred on the first Monday of April, defendants' counsel, who resided in the State of Colorado, had his grip packed and was prepared to start for Shelbyville, Missouri, to defend this case, when he received a telegram from one Carpenter, an attorney at law of the State of Iowa representing the plaintiffs, to the effect that the Shelby Circuit Court had adjourned to some time in May, not stated, and that a letter would follow, and defendants' counsel did not go to Shelbyville at that time for this reason.    A few days thereafter he received a letter from

plaintiffs' counsel to the effect that the court had adjourned to some day in May or June, that he would ascertain the precise day and notify defendants' counsel, and that nothing would be done in the case until he was notified. Thereupon the parties took the matter up for an amicable settlement and had agreed upon terms whereby nothing remained except for the plaintiff to dismiss the case when the court convened. It is stated defendants' counsel relied upon the agreement mentioned and relied further upon the fact that plaintiffs' counsel would notify him of the time when the court would convene that he might be present to protect defendants' interests; that while he was thus relying upon the promises of plaintiffs' counsel, the court convened at Shelbyville, May 30th, overruled defendants' demurrer, and simultaneously therewith, entered judgment against him. It is stated that affiants are informed and believe the truth to be that no evidence was introduced before the court on the part of the plaintiffs tending to substantiate the allegations of the petition nor to support the judgment given in the cause, and that plaintiffs' counsel (other than those representing the cause in this court) perpetrated a fraud upon the court in the very act of procuring the judgment. The fraud complained of is that said counsel stated to the court that the defendants did not further appear to the action for the reason they recognized the justness and integrity of the plaintiffs' claim and did not intend to contest it; and that they impliedly, if not expressly, represented to the court that the defendants were willing to have judgment given in favor of the plaintiffs and against them as prayed in the bill. It is stated that said representations were false and untrue; that the court was led to believe the same, and was thereby imposed upon and deceived and gave the judgment because of their inducements. Other facts are set out in the affidavits which, if true, would defeat the plaintiffs'

right of action. That is to say, a meritorious defense is shown if the facts stated be true. The principal facts stated in the affidavits and relied upon as a defense, are that plaintiffs had not paid or purchased, and therefore did not own, the note and deed of trust, as alleged in their bill and adjudged by the court; and that Nailen, from whom the plaintiffs claimed to have purchased the lands in good faith, relying upon a deed purporting to convey the same from defendants to said Nailen, neither had nor exhibited to plaintiffs a deed purporting to have been executed by defendants and to convey such lands to him.

In matters of this nature, where the courts are invoked to administer quasi equitable relief, the party making the application is required to act in good faith and exercise that degree of diligence which comports with the conduct of an ordinarily prudent man situated in like circumstances. And hence it is that quite frequently relief is denied entirely upon the ground of the negligence of defendant or his attorney, which are usually adjudged to be identical in legal effect. [5 Ency. Pl. & Pr., 29; 15 Ency. Pl. & Pr., 247, 269; Palmer v. Russell, 34 Mo. 376; Lamb v. Nelson, 34 Mo. 501; Fisher v. Fisher, 114 Mo. App. 627.]

In considering the action of the learned trial judge in striking the motion from the files and thus denying defendants a hearing thereon, the facts relied on in the affidavits in support of the motion, must be presumed to be true. Now admitting all of the facts alleged by defendants for a vacation of the judgment to be true, in order to sustain the ruling of the court, it must appear: First, that the defendants or their counsel were culpably negligent in not attending the trial; or second, that by appearing thereafter and asking the judgment to be corrected *nunc pro tunc,* they waived their right to complain of the fraud alleged to have been perpetrated with respect to the procurement of such judg-

ment and in preventing their attendance at the trial;· or third, that by requesting the court to correct its judgment *nunc pro tunc* in order to make it conform to the truth, they thereby consented to the judgment as corrected; or, fourth, that by some pleading or admission made by defendants in the cause, it appears that the judgment of the court reinstating the mortgage lien on the premises, is not prejudicial·to the rights of defendants inasmuch as it appears to be admitted that they· executed the note and deed of trust mentioned in the first instance, and that they nowhere allege they have paid the debt and discharged the lien ·thereof. These questions will receive consideration.    Whether or not the fraudulent practice by which the defendants' counsel was induced to remain in Colorado and not attend court, is sufficient of itself, if established, to authorize the court to vacate the judgment, it is unnecessary to decide.    For the purposes of the case,. it will be considered as fraud practiced in the procurement of the judgment.    Notwithstanding the rule requiring diligence on the part of a suitor, we are persuaded that on the facts above stated with respect to the absence of defendants' counsel from the court at the time the judgment was given against his client, negligence ought not to be imputed to him, as a matter of law and thus preclude defendants' right of relief. Counsel in a foreign State certainly had a right to rely upon the promises of plaintiffs' counsel to notify him when the court would convene.    Such agreements are common among members of the bar.    Lawyers ordinarily rely upon such promises on the one hand and on the other, they ordinarily see that they are fulfilled. We apprehend defendants' counsel was as diligent in this case as an ordinarily prudent man in the same circumstances ·would have been.    If, as assumed, the fraudulent practice mentioned constituted fraud practiced in the procurement of the judgment, the question

of the negligence of defendants' counsel in not attending upon the court under the circumstances stated, would be a question of fact for the trial court to determine. We are entitled to say no more than that his negligence in that behalf is not so conclusive as to preclude defendants as a matter of law. It may be said, however, that at the time defendants' counsel appeared in court at a subsequent term and moved to have the judgment corrected *nunc pro tunc,* he was then possessed of all the facts with respect to the fraudulent practice which induced him to remain away from the court at the term the judgment was given. This being true, by moving the court for a judgment *nunc pro tunc* without complaint in any manner or asking the judgment vacated for the fraudulent practice mentioned, defendants should be adjudged to have waived their right to complain or to have the judgment vacated a year thereafter for such practice; that is, for the specifications of fraud which misled him as to the term of court. However it may be with respect to defendants' waiver of the fraudulent practice mentioned, there is certainly nothing in the record tending to show that either defendants or their counsel had any knowledge at that time of the fraud alleged to have been practiced upon the court and in the presence of the court in the very act of procuring the judgment. When we advert to the facts disclosed in the affidavits, it appears that defendants did not discover the alleged fraud practiced upon the court in procuring the judgment until June, 1906. This fraud consisted of the statement alleged to have been made to the court that defendants recognized the justness of plaintiffs' claim and were not present for the reason they were willing that judgment should be given in favor of the plaintiffs. From the facts stated in the affidavits, it appears the defendants themselves at all times mentioned, resided in the State of Washington and their counsel in Colorado, and that neither had any

information on the question of fraud presented until June, 1906, several months after the judgment had been corrected *nunc pro tunc*. A motion to vacate the judgment was filed at the first term thereafter; to-wit, October term, 1906. Under such circumstances, the defendants having no knowledge of this particular fraud at the time they moved for correction of the judgment, there is no principle upon which they could be adjudged to have waived their right to complain thereof. And if these affidavits be true, it seems the defendants acted with reasonable diligence in filing the motion to vacate the judgment. It is quite clear that if the judgment was obtained by the means and in the manner stated, it was obtained through fraud practiced in the very act of procurement; and the defendants' counsel was not negligent as a matter of law under the circumstances.

The relief prayed for in the bill predicates upon the doctrine of subrogation. That involves, of course, the notion that plaintiffs purchased the lands from Nailen in good faith, relying upon the fact that Nailen had and exhibited a deed regular in form purporting to have been executed by the defendants, whereby the lands were conveyed to him and purporting to show title thereto in Nailen; that the plaintiffs having purchased in good faith, relying upon such evidence of Nailen's ownership, proceeded innocently to pay off the debt secured by the deed of trust and caused such deed of trust to be released on the records; for if plaintiffs had no reason to believe they owned the land by the purchase from Nailen and nevertheless paid off the mortgage, they would be regarded as mere volunteers. The fundamental facts are controverted, however. It is alleged in the affidavits substantially that Nailen had no such deed and that the plaintiffs had not paid off and discharged the note and deed of trust mentioned. If these facts are true; that is to say, if Nailen had no

deed such as would lead one acting in good faith to believe that he had succeeded to defendants' title to the land, and plaintiffs nevertheless purchased from him and paid off the mortgage as mere volunteers; then they ought to be estopped from invoking the doctrine of subrogation and asserting that they acted in good faith and were innocently misled. In other words, if they were mere volunteers in paying the debt and discharging the mortgage lien, equity will not relieve them from the results of their own folly. And it is quite clear that if plaintiffs had neither purchased nor paid off the note described in the deed of trust and had no title thereto, they would not be entitled to a judgment declaring them the owners thereof, subrogating them to the rights of the payee therein, and reinstating the lien of the deed of trust on the lands. The facts on this phase of the case set out in the affidavits certainly ought not to be adjudged, as a matter of law, insufficient to entitle the defendants to relief. At best, they constitute an issue for the trier of the facts.

It is suggested that because defendants' counsel moved the court to correct its judgment *nunc pro tunc* and prepared the form of the judgment which was adopted and entered by the court at a subsequent term and prior to the filing of the motion to set it aside, they are estopped from moving its vacation thereafter. Upon first thought, it would appear there is something in this act which savors of a judgment by consent. That is to say, that the defendants' counsel had prepared such a judgment as was agreeable to his client and induced the court to enter it *nunc pro tunc.* This suggestion is unsound, however, when we reflect that the purpose of a judgment *nunc pro tunc* is to make the record speak the truth with respect to matters which actually occurred at the time of entering the judgment and have been preserved by some memorandum or minutes in the cause from which the *nunc pro tunc* entry may be for-

131 App.—39

mulated and entered. Now to view the matter in the
present posture of the case, it appears the defendants'
counsel, after having been deterred from attending court
by the fraudulent representations heretofore adverted
to, discovered that a judgment had been given against
his client. Thereupon during vacation of the court, he
appeared at Shelbyville and examined the records,
which disclosed that a trial had been had, that evidence
had been introduced, that the court had found the issues
in favor of the plaintiffs, and that a decree had been
entered granting all of the relief prayed for. From
sufficient memorandum in the records of the court, it ap-
peared, however, among other things, the court had
decreed that as between the plaintiffs and defendants,
the Nailen deed was a forgery and that title to the lands
remained as between the parties to this suit, in the de-
fendants. So much and nothing more was adjudged in
favor of the defendants. This matter, however, did not
appear in the judgment of the court as recorded by the
clerk. In truth, the original judgment entry recited
that the court had declined to give judgment as to
whether or not the Nailen deed was a forgery. At this
time the court had adjourned, no motions for new trial
or in arrest had been filed, no steps taken for review,
and from all that appeared, the proceeding was en-
tirely regular. The judgment appeared to have been
given after a trial had and the examination of witnesses.
Defendants' counsel had no knowldge whatever that no
evidence had been introduced on the part of plaintiffs
(that such was a fact, is alleged in the affidavits) ; he
had no knowledge that plaintiffs' counsel had stated to
the court that defendants conceded the justness of the
plaintiffs' claim and did not appear to contest it for the
the reason they were willing that judgment should be
given against them thereon. In these circumstances,
there appeared no alternative but to abide the result.
To the end, therefore, that the defendants should have
at least that which the court had adjudged them; that

is, that the Nailen deed should be declared a forgery and the title to the lands as between the parties to this suit, should be determined at rest in the defendants; counsel moved the correction of the judgment *nunc pro tunc* to that effect. Now certainly, under such circumstances, there can be no element of consent to the judgment arising by the act of defendants' counsel in preparing and causing to be entered a judgment correcting the original in conformity to the truth as indicated by memoranda in the minutes of the court entered at the time the original judgment was given. The theory of a judgment *nunc pro tunc* is that it is entered now for then, in order that the judgment, as corrected, shall speak the truth and impart verity with respect to the relief which was actually awarded, and from some oversight or otherwise, failed to be incorporated in the original entry. The court, by correcting the judgment *nunc pro tunc* and adopting the form of judgment prepared by defendants' counsel affirmed that the judgment as originally recorded, was untrue, and that as corrected in the form prepared, it spoke the truth. The mere fact of preparing a judgment and moving its correction in accordance with the truth, certainly cannot operate as an estoppel against the defendants upon the theory that they consented to such judgment, for they had no part nor parcel in it. The judgment was so given originally without their knowledge or consent and the correction was made by the court to the end that its records should impart absolute verity with respect thereto.

There is no admission on the part of defendants contained in the pleadings or otherwise from which it appears that the relief adjudged to the plaintiffs was not prejudicial. This being true, the judgment will be reversed and the cause remanded with directions to the trial court to reinstate the motion to vacate the judgment and proceed therewith according to law. It is so orderd. *Bland, P. J.,* and *Goode, J.,* concur.